**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| The PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 08 C 04210 |
| COUNTRYWIDE FINANCIAL CORPORATION, | ) | |
| COUNTRYWIDE HOME LOANS, INC., FULL | ) | Judge Elaine E. Bucklo |
| SPECTRUM LENDING, COUNTRYWIDE HOME | ) | |
| LOANS SERVICING, LP, and ANGELO MOZILO, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO REMAND**

The Plaintiff, the PEOPLE OF THE STATE OF ILLINOIS, by LISA MADIGAN,

Attorney General of Illinois, respectfully moves the Court to remand this matter back to the

Circuit Court of Cook County, Illinois.  Despite the fact that the People's Complaint alleges only

violations of Illinois law and that resolution of the issues in the People's Complaint requires only

interpretation of Illinois law, Defendants contend that the Attorney General's claims fall within

the original jurisdiction of the federal courts.  As discussed below, federal jurisdiction is simply

inappropriate.

<u>FACTUAL BACKGROUND</u>

The Attorney General of Illinois filed a complaint against Countrywide Financial

Corporation, Countrywide Home Loans, Inc., Full Spectrum Lending, Countrywide Home Loans

Servicing, LP, and Angelo Mozilo (collectively "Countrywide") on June 25, 2008 in the Circuit

Court of Cook County, Illinois.  Countrywide was the leading mortgage lender in Illinois in

2004, 2005 and 2006.  In 2006, Countrywide was the leader in originating high-cost loans in the Chicago metropolitan area.

The Attorney General's Complaint alleges that Countrywide engaged in unfair and deceptive acts or practices in its pursuit of market share that resulted in the massive sale of unaffordable mortgage loans to Illinois borrowers and increased delinquencies and foreclosures for Illinois homeowners.  As alleged in the Attorney General's Complaint, Countrywide violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, by selling mortgage loans to borrowers who did not have the ability to repay them; engaging in loan origination practices that exposed borrowers to an unnecessarily high risk of foreclosure or loss of home equity; originating loans that were unnecessarily more expensive to unknowing borrowers; engaging in deceptive marketing and advertising; incentivizing broker and employee misconduct, yet failing to exercise sufficient oversight to ensure that such misconduct did not occur; and unfairly and deceptively servicing borrowers' loans.  Complaint at ¶¶294-299.  In addition, the Attorney General alleges that Countrywide violated the Illinois Fairness in Lending Act, 815 ILCS 120/4, by engaging in equity stripping – refinancing consumers into loans that it knew or should have known were unaffordable and decreasing borrowers' equity in their homes, with the primary purpose of receiving fees for the refinancing.  Complaint at ¶¶301.

The consequences of Countrywide's deceptive and unfair lending practices have become apparent.  By the end of the first quarter of 2008, 35.88% of the subprime loans serviced by Countrywide nationwide were delinquent.  The delinquencies in loans are evident in increased foreclosure filings.  From 2006 to 2007, Countrywide's foreclosure complaint filings increased

by 117% in Cook County.[1]  It is not just imperiled homeowners who feel the effects of

foreclosures.  Illinois communities are harmed due to the cost of declining property values and a

shrinking tax base.  At least one study projects this cost to be as much as $15 billion in Illinois.

The Attorney General's Complaint seeks to hold Countrywide accountable for its unfair

and deceptive lending and servicing practices through a combination of injunctive relief, stays on

foreclosures, restitution and civil penalties.  Instead of resolving these issues in Plaintiff's chosen

state court forum, Countrywide has delayed Plaintiff's ability to move its case forward and

obtain relief for Illinois consumers by filing a removal petition.  Countrywide has not, however,

delayed its own litigation against Illinois consumers during this time.  Since the date Plaintiff

filed its Complaint, Countrywide has filed roughly 170 foreclosure actions against Cook County

residents.  Since Countrywide filed its removal petition, approximately 70 more foreclosure

proceedings have been filed against Illinois consumers in Cook County.  Countrywide's removal

petition has only served to forestall resolution of this matter, as none of its arguments show a

proper basis for federal jurisdiction in this matter.

## LEGAL STANDARD

As stated by the Supreme Court, "considerations of comity make us reluctant to snatch

cases which a State has brought from the courts of that State, unless some clear rule demands it."

*Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for*

*Southern California et al.*, 463 U.S. 1, 22-23 n. 22 (1983).  Removal questions are to be "strictly

construed against federal jurisdiction." *Katonah v. USAir, Inc.*, 868 F. Supp. 1031, 1033 (N.D.

Ill. 1994).  The removal of a state court action to federal court is premised on two requisites: (1)

that the action was properly commenced in the state court; and (2) that the action could have

---

[1] This only includes loans originated and/or serviced by Countrywide Home Loans, Inc. and not foreclosures filed
by Full Spectrum Lending or any other Countrywide entity.

been originally commenced in the federal court.  28 U.S.C. §1441.  If a complaint arises under

state rather than federal law, it could not have been brought in or removed to a federal district

court under the federal question jurisdiction.  *Olympia Exp., Inc. v. Linee Aeree Italiane, S.P.A.*,

509 F.3d 347, 349 (7th Cir. 2007).  Original jurisdiction in the federal courts must be present for

proper removal as "the lack of subject matter jurisdiction requires remand."  *Central Laborers*

*Welfare Fund v. Philip Morris, Inc.*, 85 F. Supp. 2d 875, 881 (S.D. Ill. 1998).  The removing

party bears the burden of establishing subject matter jurisdiction, and the removal statute must be

strictly construed.  *See e.g., Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st

Cir.1999).  "The bar is further raised when the removal in question is of an action brought

originally by a State in a State court."  *People of State of California v. H&R Block, Inc.*, 2006

WL 2669045 (N.D. Cal. Sept. 18, 2006) (rejecting H&R Block's argument that state consumer

protection law claims alleging unfair and deceptive marketing of its tax rebate loans necessitated

resolution of questions of federal law).

## ARGUMENT

Countrywide argues that this Court has original jurisdiction over this matter for three

reasons.  Countrywide first invokes two exceptions to the well-pleaded complaint rule that

requires federal jurisdiction to appear on the face of Plaintiff's Complaint and cites two potential

defenses to Plaintiff's claims.  It contends that Plaintiff's Complaint contains claims requiring

the adjudication of "substantial, disputed questions of federal law," even though Plaintiff alleges

no violations of federal law.  Amended Notice at ¶4.  Second, Countrywide argues that federal

jurisdiction is proper since it conducts the loan servicing activities at issue in Plaintiff's

Complaint under the direction of federal officers.  Amended Notice at ¶5.  In the alternative, and

in a remarkable stretch, Countrywide asserts that federal jurisdiction is proper as Plaintiff's

Complaint contains claims that arise under the Bankruptcy Code or arise in one or more cases under the Bankruptcy Code.  The arguments presented by Countrywide are simply insufficient to show that this Court has original jurisdiction over Plaintiff's Complaint.

I.    There is an Insufficient Showing of Any Substantial Federal Question or Federal Officer Immunity to Mandate that this Court Deprive Illinois of its Chosen Forum for the Adjudication of its State Law Claims

Countrywide's burden of showing original jurisdiction in the federal courts is particularly heavy since the Attorney General's Complaint contains no federal claims.  The Attorney General's Complaint relies exclusively on Illinois law.  Where the complaint contains only claims under state law, as it undisputedly does in this case, the removing party must demonstrate that the state law claims are "so completely preempt[ed] ... that any civil complaint raising this select group of claims is necessarily federal in character," *see Metropolitan Life v. Taylor*, 481 U.S. 58, 63-64 (1987), or, as Countrywide unsuccessfully attempts to do here, demonstrate that the state law claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005).

A.    No "Substantial Federal Question" Forms the Basis of Federal Jurisdiction When the Elements of Plaintiff's Claims Require No Necessary Interpretation of Federal Law and Exercising Jurisdiction Would Upset Comity Between Federal and State Courts

Countrywide contends that federal question jurisdiction exists in this matter because Plaintiff's claims "will necessitate the adjudication of substantial, disputed questions of federal law."  Amended Notice at ¶7.  Here, remand is required because Countrywide fails to demonstrate that adjudication of Illinois' claims under the Consumer Fraud and Unfair Deceptive Business Practices Act, 815 ILCS 505/2 *et seq.*, and Fairness in Lending Act, 815 ILCS 120/4,

*necessarily* involve the determination of a contested and substantial question of federal law.  *See Grable & Sons,* 545 U.S. at 313 (2005).

As an initial matter, it is not *necessary* to interpret federal law to adjudicate Plaintiff's claims because Plaintiff makes no federal claims and compliance with federal law is not an element of Plaintiff's claims.  To succeed on its Consumer Fraud Act claim (Count I), Plaintiff need allege only that: (1) Countrywide is engaged in a trade or commerce, and (2) Countrywide is engaged in unfair or deceptive acts or practices in the conduct of that trade or commerce. *People ex rel. Hartigan v. All American Aluminum and Const. Co., Inc.*, 171 Ill.App.3d 27, 34, 524 N.E.2d 1067, 1071, 121 Ill.Dec. 19, 23 (1st Dist. 1988) (citations omitted).  Determining whether acts or practices are unfair or deceptive is done on a case by case basis, but includes consideration of whether the practice (1) offends public policy as established by statutes, the common law, or otherwise, or is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers or competitors. *Id.* at 34-35.  To prove a violation of Count II, the Fairness in Lending Act, Plaintiff must show that Countrywide refinanced consumers' mortgages for the primary purpose of receiving fees when it knew or should have known the loans were unaffordable and decreased borrowers' equity in their homes.  815 ILCS 120/3.  As the elements of Plaintiff's claims are not based on federal law, no interpretation of federal law is required.

Countrywide argues that federal jurisdiction is nonetheless required as the Truth in Lending Act, 15 U.S.C. §1601 *et seq.*, and the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 *et seq.*, might have authorized some of the acts or practices Plaintiff's Count I allegations.[2]

---

[2] There is no argument that interpretation of federal law is necessary or relevant to Count II of Plaintiff's Complaint.

Section 10(b) of the Consumer Fraud Act provides a defense for "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States."  815 ILCS 505/10b.  But, the existence of a potential federal defense is generally insufficient to confer federal jurisdiction on a well-pleaded complaint containing only state law causes of action.  *See In re Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (holding that federal preemption is ordinarily a federal defense and does not authorize removal to federal court).  Courts have uniformly treated compliance with Section 10b as an affirmative defense argued by the defendant – not an element of the plaintiff's prima facie case.  *See, e.g., Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716 (N.D. Ill. 1988); *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 152-54 (1908) (a practice is not unfair if it complies with the law, but that is a defense that does not support federal question jurisdiction).  This Court is not required to look at Countrywide's potential defenses to divine whether a federal issue might present itself in this matter.  *See Franchise Tax Board*, 463 U.S. at 12-13.  For this reason alone, Countrywide fails to show federal jurisdiction is appropriate under this theory.

Even if claims arising from defenses were sufficient to confer federal jurisdiction (which they are not), Countrywide would have to show that interpretation of the federal issues it has identified is essential and substantial in terms of the allegations in Plaintiff's Complaint.  As one court stated, "[i]t is not sufficient to show that a state law claim simply touches upon or implicates a federal issue, but rather determination of the federal issue must be necessary to resolve the claim."  *People of State of California v. H&R Block, Inc.*, 2006 WL 2669045, at 4 (N.D. Cal. 2006) (unfair and deceptive marketing suit remanded when TILA allegation was one of many alternative predicate violations).  This principle has been consistently applied in Illinois.

*See Collins v. Pontikes*, 447 F.Supp.2d 895, 900 (N.D. Ill. 2006) (remand warranted when plaintiffs pled a number of grounds unrelated to violation of federal law to support misrepresentation claim); *Orbitz, LLC v. Worldspan, L.P.*, 425 F.Supp.2d 929, 932 (N.D. Ill. 2006) (remand granted when allegations aside from failure to comply with Department of Transportation regulations would support state consumer fraud claim); *Atanus v. S&C Electric Company*, 454 F.Supp.2d 753, 756 (N.D. Ill. 2006) (remand proper when determination that employer violated federal regulation cited in plaintiff's complaint was not necessary to resolve claims); *Nagel v. Chukerman Packaging Ltd.*, 19 F.Supp.2d 826, 829 (N.D. Ill. 1998) (since case could be resolved without referring to ERISA plan that required federal interpretation, matter was remanded back to state court).

As far as TILA, Countrywide appears to argue that it will not have committed four of the violations underpinning Plaintiff's Consumer Fraud Act claim if its disclosures were adequate under TILA. In terms of RESPA, Countrywide contends that, if the compensation it paid mortgage brokers complies with RESPA, it will not have committed two of the violations underpinning Plaintiff's Consumer Fraud Act claim. Unfortunately for Countrywide's federal jurisdiction argument, even if the six violations targeted by Countrywide were taken out of Plaintiff's Complaint, there would remain 33 reasons that Countrywide could be liable for violating Illinois' Consumer Fraud Act (¶¶294(a)-(j); 295(a)-(d); 296(a)-(b); 297(a), (c), (e), (g), (i)-(n); 298(a)-(d); and 299(a)-(c)). Therefore, interpretation of federal law is not *essential* to the resolution of Plaintiff's Complaint. *Cf. Grable*, 545 U.S. at 314-315 (removal appropriate when the only contested legal or factual issue was whether plaintiff received notice within the meaning of a federal statute). Because Plaintiff's Complaint presents numerous factual and legal issues of state law, a substantial dispute or controversy involving federal law would not be present even if

TILA and RESPA were potentially implicated in some of the claims.  S*ee Coleman v. Beazer Homes Corp.*, 2008 WL 1848653, at \*4-5 (W.D.N.C. Apr. 23, 2008) (case remanded since the possible existence of some TILA and RESPA issues was not substantial).

Even as to these six allegations targeted by Countrywide, it mistakenly assumes that TILA and RESPA must be interpreted to adjudicate claims regarding mortgage broker compensation and loan disclosures.  If Countrywide's assumption were correct, then consumer fraud act claims regarding mortgage broker compensation or loan disclosures would always be dismissed or converted to TILA and RESPA claims.  That is clearly not the case.  Authorities hold that plaintiffs are able to assert consumer fraud claims concerning mortgage lending that are independent of TILA or RESPA claims.  In *Heastie*, the plaintiff alleged that FAMCO misrepresented itself as the lender in consumer credit transactions, when the lender ultimately turned out to be a different entity.  690 F.Supp. at 717.  Defendants argued that TILA preempted claims regarding residential mortgages and, in the alternative, that TILA compliance provided a complete defense under Section 10b to any allegations they violated disclosure laws.  *Id.* at 720.  The court rejected both arguments.  Moreover, the court concluded that  "[w]hile compliance with federal regulations may be a complete defense to Consumer Fraud Act complaints centering on particular technical issues…, it should not be a complete defense to allegations of fraudulent schemes."  *Id.* at 721; *see also Patterson v. Regions Bank*, 2006 WL 3407852 (S.D. Ill. Nov. 27, 2006) (state consumer fraud act claim allowed when issue was whether defendants misrepresented note rate, not legal right to charge interest); *Blankenship v. Bridgestone Americas Holding, Inc.*, 467 F.Supp.2d 886, (C.D. Ill. 2006) (remand granted as exclusive federal jurisdiction over collective bargaining agreement did not prohibit state law misrepresentation and concealment claims that did not attack adequacy of agreement's safety provisions); *Brown v.*

*Vickers Employees Credit Union*, 162 F.Supp.2d 528, 533 (S.D. Miss. 2001) (remand granted since plaintiff opted to assert claims of fraudulent concealment instead of TILA violations).[3]

The cases cited by Countrywide simply do not support its position that federal jurisdiction is required in this matter. First of all, three of the cases cited by Countrywide are Illinois state court cases in which the Illinois court examines whether TILA or RESPA compliance provides a defense to a Consumer Fraud Act claim. See Amended Notice at ¶12 (citing *Jackson v. South Holland Dodge, Inc.*, 197 Ill.2d 39, 755 N.E.2d 462, 258 Ill.Dec. 79 (2001); *Lanier v. Associates Finance, Inc.*, 114 Ill.2d 1, 499 N.E.2d 440, 101 Ill.Dec. 852 (1986); *Johnson v. Matrix Financial Services Corp.*, 354 Ill.App.3d 684, 820 N.E.2d 1094, 290 Ill.Dec. 27 (1st Dist. 2004)). It is somewhat remarkable that Countrywide cited these cases since they expressly show that Illinois courts are perfectly able to analyze RESPA and TILA defenses to Consumer Fraud Act claims and federal jurisdiction is unnecessary. In addition, the fact that an Illinois court might have to apply a standard developed in federal law is unremarkable and no basis for federal jurisdiction. For this reason *Fiore v. First American Title Insurance*, 2006 WL 25064 (S.D. Ill. Aug. 28, 2006) is also of little support for Countrywide's federal jurisdiction argument.

Finally, assuming for the sake of argument that Countrywide proves there is a substantial and disputed federal question in this matter, this Court should not exercise its discretion to find federal jurisdiction. This is a case brought by Illinois' senior-most law enforcement authority in an Illinois state court to enforce Illinois police and regulatory laws for conduct harming Illinois consumers concerning real property situated in Illinois. Under these circumstances, the

---

[3] Although there is no need to analyze Countrywide's specific proposed defenses as compared to the allegations in Plaintiff's Complaint, Plaintiff does not concede that any of its allegations touch on matters for which TILA or RESPA compliance would be relevant.

discretionary exercise of federal jurisdiction would be unnecessarily disruptive. *See Franchise Tax Board*, 463 U.S. at 21 n.22. It would serve no congressional policy for a federal court to seize control over the Attorney General's Consumer Fraud Act and Fairness in Lending Act claims. *See Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills of Mass., Inc.*, 352 F.3d 33, 40-41 (1st Cir. 2003) (quoting from *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (assessment of jurisdiction must be "informed by a sensitive judgment about whether the existence of federal judicial power is both appropriate and pragmatic" and "at bottom, we must determine whether the dispute is one that Congress intended federal courts to resolve.") (internal citations omitted). There is no indication Congress intended for federal courts to decide all cases that might deal with TILA or RESPA issues. *See Evans v. Courtesy Chevrolet II, LP*, 423 F.Supp.2d 669, 672 (S.D. Tex. 2006) (citing 15 U.S.C. §1610, and holding that "TILA's language indicates that Congress did not deem it important for federal courts to decide all cases that might raise TILA issues"). The common rule is that comity and respect for state courts dictate that state courts are fully capable of addressing federal defenses. *Cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (noting in the context of *Younger* abstention that "proper respect for the ability of state courts to resolve federal questions presented in state court litigation mandates that the federal court stay its hand").

Here, the federal court has broad discretion. Even where a court finds that a state action requires resolution of a contested issue of federal law, it may still decline to exercise federal jurisdiction if it would be inconsistent "with congressional judgment about the sound division of labor between state and federal courts." *Grable*, 545 U.S. at 313. In this state enforcement action, the balance of federal and state judicial responsibilities clearly favors an Illinois state court interpreting state statutes. *See id.* at 313-314; *see also New York ex rel. Cuomo*, 514

F.Supp.2d. at 401 (finding that "the principles of comity and federalism…[are] even more relevant when, as here, the case was brought by the state itself," ultimately holding that "refusing to remand this case would unreasonably strip the state of judicial responsibility."); *Mathis v. Gibson*, 2008 WL 2330537, at *3 (D.S.C. June 3, 2008) (holding that even if such substantial issue of federal law existed, the exercise of federal jurisdiction would "result in a significant transfer of state law claims to federal courts, thereby disrupting the balance of federal and state judicial responsibilities") (citation omitted). The inescapable outcome of Countrywide's argument is that federal jurisdiction will be required for all state law claims related to mortgage lending on which TILA and RESPA might touch. This will result in exactly the outcome the Supreme Court attempted to avoid in *Grable*, "a potentially enormous shift of traditionally state cases into federal courts." *Grable*, 545 U.S. at 319.

> B.    Federal Officer Removal is Inappropriate Based on Countrywide's Allegation it Abided by the Regulatory Framework Generally Applicable to All Companies Engaged in Mortgage Loan Servicing.

Countrywide's attempt to avail itself of federal jurisdiction through 28 U.S.C. § 1442(a)(1) is equally unsuccessful. Proper removal under this "federal officer" provision requires Countrywide to "demonstrate that (1) it is a person within the meaning of the statute; (2) it acted under the direction of a federal officer, meaning there is a nexus or causal connections between plaintiff's claims and its actions; and (3) it can assert a colorable defense to state-law liability." *Harris v. Rapid American Corporation, et al.*, 532 F.Supp.2d 1001, 1003 (N.D. Ill 2007). While Countrywide might meet the first prong of the test, it fails to show that Defendant Countrywide Home Loans Servicing, L.P. works "under the direction of a federal officer" within the meaning of the statute. Countrywide has not established it is "acting under" a federal officer with any document memorializing formal delegation of legal authority from a federal agency,

such that its mere compliance with numerous regulations transforms its relationship with the federal agencies beyond that of regulator and regulated and mandate federal officer removal.

In fact, Countrywide has completely strayed away from the legal standard for federal officer removal necessary to bring it within the scope of acting under the direction of a federal officer. Federal officer removal is not warranted on "the fact that a federal regulatory agency, directs, supervises, and monitors a company's activities in considerable detail." *See Watson v. Phillip Morris Companies, Inc.*, 127 S.Ct. 2301, 2304 (2007); *see also Kelly v. Martin & Bayley, Inc.*, 503 F.3d 584, 586 (7th Cir. 2007) (citing *Watson* and reversing denial of remand motion). Evidence of some relationship beyond that of regulator and regulated is required. Countrywide submits pages explaining the direction, supervision, and monitoring involved in complying with regulations governing the servicing of HUD and VA insured mortgage loans, but a unanimous Supreme Court concluded that a "private firm's compliance (or non-compliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a 'federal official'…even if the private firm's activities are highly supervised and monitored." *Watson*, 127 S.Ct. at 2308. The Court also explained that even though "acting under" does "involve an effort to *assist* or to help *carry out* the duties or tasks of the federal officer," this "does *not* include simply *complying* with the law." *Id.* at 2307 (italics in original). The citations to handbooks and regulations put forth by Defendant as evidence of a circumstance fostering a delegation of a legal authority are insufficient to satisfy the "arising under" element of federal officer removal.

The Supreme Court clearly requires a formal delegation of legal authority, not a vague directive of delegation created from regulations or letters. *See Watson*, 127 S.Ct. at 2308-2310 (analyzing documents supporting "delegation" between federal agency and defendant and

concluding there was no formal delegation). Requiring a "document[] [that] establish[es] [a] type of formal delegation," *id.* at 2310, furthers the necessary limitation on the liberal construction of "arising under." *See id.* at 2305 (concluding "arising under" must be liberally construed "[b]ut broad language is not limitless"). To allow Countrywide's required compliance with the general laws regulating mortgage servicing to suffice as evidence of formal delegation would eviscerate the bright-line rule of *Watson*.

II.    Bankruptcy Issues Do Not Support Removal of this Matter that Does Not Arise Under the Bankruptcy Code, is an Exercise of Illinois' Police and Regulatory Powers, and Presents Numerous Issues Supporting Discretionary Abstention.

   A.    This Case Does Not "Arise Under" the Bankruptcy Code or "Arise In" a Case Under the Bankruptcy Code

Countrywide also seeks removal on the basis of federal bankruptcy jurisdiction. It argues that this "is a civil action arising under the Bankruptcy code or arising in one or more cases under the Bankruptcy Code" and that, therefore, there exists federal bankruptcy jurisdiction under 28 U.S.C. §1334(b) and removal is proper. Amended Notice at ¶¶6 and 45. Countrywide's argument is without any merit. This is not a cause of action "arising under" title 11 or "arising in" a case under title 11. Even assuming arguendo there were bankruptcy jurisdiction over Plaintiff's claims, removal is not proper under 28 U.S.C. §1452(a) because Plaintiff's cause of action clearly is an exercise of a governmental unit's police or regulatory powers. Further, even if there were bankruptcy jurisdiction over Plaintiff's claims, this Court should remand the case based on equitable grounds under 28 U.S.C. §§ 1452(b) and 1334(c).

Countrywide contends that this Court has bankruptcy jurisdiction over the Attorney General's action because "[t]his Court has original and exclusive jurisdiction over claims and over property of the various bankruptcy cases filed in this district, including the claims asserted in the instant (state court) case filed by the Illinois Attorney General" (Amended Notice at ¶47),

and that this is a cause of action "arising under" title 11 or "arising in" a case under title 11

(Amended Notice at ¶¶6 and 45). Countrywide's argument is flawed. The scope of jurisdiction

based on claims that "arise under" the Bankruptcy Code or "arise in" a case under the

Bankruptcy Code ". . . is limited to questions that arise during the bankruptcy proceeding and

concern the administration of the bankrupt estate, such as whether to discharge a debtor."

*Zerand-Bernal Group, Inc. v. Cox* 23 F.3d 159, 162 (7th Cir. 1994). Jurisdiction over cases

"arising under" the Bankruptcy code ". . . includes only those proceedings that involve a cause of

action 'created or determined by a statutory provision of title 11.'" *Spaulding & Co. v.*

*Buchanan v. Berman, Roberts & Kelly* (*In re Spaulding & Co.*), 131 B.R. 84, 88 (N.D. Ill. 1990)

quoting *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987) (citations omitted). "Arising in" jurisdiction

". . . encompasses 'those 'administrative' matters that arise *only* in bankruptcy cases'-matters not

based on any right expressly created by title 11, but that would have no existence outside of the

bankruptcy." *Id*. quoting *Wood*, 825 F.2d at 97 (citations omitted). The present cause of action

neither arises under title 11 nor arises in any case under title 11.

　　　First, the State's cause of action was not created by title 11, nor will it be determined by

that statute. Plaintiff's claims are based entirely on state law and will be determined by state

law. Second, the cause of action is not arising in a bankruptcy proceeding and certainly has

existence separate and apart from any bankruptcy proceeding. As stated by the Seventh Circuit,

". . . th[e] ["arise under" and "arise in"] provision of section 1334(b) cannot possibly be

applicable to this dispute between two nonparties to the bankruptcy proceeding." *Zerand-*

*Bernal*, 23 F.3d at 162.[4]

---

[4] Similarly, this cause of action is not a "core" proceeding, as alleged by Countrywide. Amended Notice at ¶48. In the Seventh Circuit, "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Barnett v. Stern*, 909 F.2d

(cont'd)

Moreover, contrary to Countrywide's assertion, the Attorney General does not represent individual borrowers, and this cause of action is not the property of individual consumers and thus does not confer original and exclusive jurisdiction with this Court. The complaint against Countrywide is brought under the Consumer Fraud Act and the Illinois Fairness in Lending Act, both of which authorize the Attorney General to bring an action in the name of the People of the State of Illinois to enjoin practices that violate the acts and for related relief. *See* 815 ILCS 505/7 and 815 ILCS 120/5(c). These claims belong to the State of Illinois alone; they do not belong to any individual or any individual's bankruptcy estate. *See People of the State of Illinois ex rel. Hartigan v. Lann*, 225 Ill.App.3d 236, 587 N.E.2d 521, 167 Ill.Dec. 252 (1st Dist. 1992); *see also People of the State of Illinois ex rel. Scott v. Regency Industries, Inc.*, 96 Ill.App.3d 1100, 1104, 422 N.E.2d 259, 262-263, 52 Ill.Dec. 578, 581-82 (4th Dist. 1981) (". . . even when the Attorney General proceeds for relief, such as restitution, on behalf of a consumer against a violator, the proceeding does not dispose of the controversy, when the consumer is not a party, because the judgment is not binding upon that consumer.") [5];

In the seminal case *Lann*, the Attorney General sued various defendants for alleged home repair fraud and asked for an injunction against continued business operations, rescission of contracts, fines and restitution for victims. 225 Ill. App.3d at 238, 587 N.E.2d at 522, 167 Ill.Dec. at 253. During proceedings before the trial court, it ordered that the individual

---

(… cont'd)

973, 981 (7th cir. 1990). The Plaintiff's cause of action does not invoke any right under title 11, nor is it a proceeding that could only arise in the context of a bankruptcy case. This case, in fact, arose completely separate and apart from any bankruptcy proceeding. As such, this cause of action is not a "core" proceeding.
[5] Although *Lann* and *Regency Industries, Inc.* were decided under the Consumer Fraud Act, their rationale is equally applicable to public interest enforcement actions brought by the Attorney General under the Illinois Fairness in Lending Act.

consumers for whom restitution was sought be treated as party plaintiffs for discovery purposes.

On interlocutory appeal, the appellate court reversed the lower court, stating:

> Although restitution may benefit aggrieved consumers, the remedy flows from the basic policy that those who engage in proscribed conduct or practices surrender all profits flowing therefrom.  Because the nature and object of the Act and its remedies are indisputably the protection of the public interest, we believe the legislature intended the State to be the only real party in interest, and the only party subject to discovery.

225 Ill. App.3d at 240-41, 587 N.E.2d at 524, 167 Ill.Dec. at 255.

Indeed, the Ninth Circuit held in response to an argument very similar to the one made by Countrywide here that claims brought by the California Attorney General and the City of San Francisco alleging violations of their state business and professions code were not claims of the debtor or property of the debtor's estate.  *City & County of San Francisco v. PG&E Corp.*, 433 F.3d 1115, 1126-1127 (9th Cir. 2006), *cert denied*, 127 S.Ct. 208, 166 L.Ed.2d 144 (2006).  In *PG & E Corp.*, the debtor was a wholly-owned subsidiary of defendant PG & E.  The claims brought by the Attorney General and the City alleged that PG & E violated the business and professions code by illegally transferring billions of ratepayer generated dollars from the debtor to itself.  *Id*. at 1118-19.   One of the issues on appeal was whether the exception to bankruptcy removal for police or regulatory actions applied to the State's and City's claims for restitution. The Court held that such claims were encompassed in this exception to removal.  *Id.* at 1125-26. The Court further ruled that, contrary to PG & E's contentions, these governmental claims were not property of the debtor's estate, and that section 541 of the Bankruptcy Code did not trump the exception to removal for these police or regulatory actions.  *Id*. at 1127.  In so holding, the court stated that:

> The government's right to pursue a cause of action under section 17200 is separate from, and not derivative of, the Utility's right to assert an action as a

debtor-in-possession.  The government's right of action under section 17200 is not part of the bankruptcy estate under section 541."  *Id.*

As *Lann* makes clear, the Attorney General's suit against Countrywide is a law enforcement action brought in the public interest and the individual borrowers are not parties to the suit.  It therefore follows, as the Ninth Circuit found in *PG&E Corporation*, that the Attorney General's cause of action is not and cannot be an asset of the bankruptcy estates of any, much less all, of the 8,347 individuals that Countryside reports as having filed for bankruptcy.[6]

B.    Assuming Arguendo that Bankruptcy Jurisdiction Exists, Removal Is Not Appropriate Because This Lawsuit is an Exercise of Illinois's Police and Regulatory Powers

Even if federal bankruptcy jurisdiction exists, which it does not, 28 U.S.C. §1452 prohibits removal of a civil action brought by a governmental entity to enforce its police or regulatory powers.[7]  The Seventh Circuit has stated that the police or regulatory power exception to the automatic stay provision in the Bankruptcy code applies "'to the enforcement of state laws affecting health, welfare, morals, and safety.'"  *In re Phillips*, 368 B.R. 733, 739 (Bkrtcy. N.D.Ind. 2007), quoting *Cash Currency Exchange, Inc. v. Shine (In re Cash Currency Exchange,*

---

[6] It should be noted that both the Consumer Fraud Act and the Illinois Fairness in Lending Act contain provisions pursuant to which an aggrieved person may file an individual action, *see* 815 ILCS 505/10a, 815 ILCS 120/5(a), and any such individual action would be an asset of the bankruptcy estate if the person were a debtor in bankruptcy.  But that is not the case with the Attorney General's lawsuit.

[7] Section 1452 provides:
> Removal of claims related to bankruptcy cases
> (a)  A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.
> (b)  The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

*Inc.)*, 762 F.2d 542, 555 (7th Cir.), *cert. denied*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232

(1985).[8]  The legislative history for this police or regulatory power exception provides:

> where a governmental unit is suing a debtor to prevent or stop violation of [laws relating
> to] *fraud*, environmental protection, *consumer protection*, [or] safety, or similar police or
> regulatory laws, *or attempting to fix damages for violation of such a law*, the action or
> proceeding is not stayed under the automatic stay.
> *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,* 488 F.3d 112,
> 132 (2nd Cir. 2007) (emphasis added) quoting H.R. Rep. No. 95-595, at 343 (1978),
> reprinted in 1978 U.S.C.C.A.N. 5693, 6299.

Plaintiff's lawsuit falls squarely within the parameters of the police or regulatory

exception to removal in Section 1452.  The suit is one to protect the welfare of the state of

Illinois and its citizens, and is one enforcing one of the State's major laws on moral conduct and

consumer protection – the Consumer Fraud Act – as well as a statue concerning fairness in

lending.

Countrywide argues that the police and regulatory exception does not apply to Plaintiff's

claims because they are actions to protect a pecuniary interest in property of the debtors or their

bankruptcy estates.  In support of this argument, Countrywide cites *FTC v. First Alliance Mort.*

*Co., (In re First Alliance Mort. Co.)*, 264 B.R. 634 (C.D. Cal. 2001).  This argument is

completely without merit and is not supported by the *First Alliance* decision.

In determining whether a governmental unit's actions fall within the police or regulatory

exception courts look to "whether the actions relate to matters of public safety and health or to

'protection of the government's pecuniary interest in the debtors' property.'"  *In re Phillips*, 368

B.R. at 739.  In this case it is apparent that the Attorney General is not seeking to protect a

pecuniary interest in property of the debtor, or the estate.  The Attorney General is seeking to

---

[8] Due to the similarity of language and purpose, courts have looked to cases and legislative history concerning the
police and regulatory exception to the Bankruptcy Code's automatic stay provision when interpreting section 1452's
police or regulatory power exception to removal.  *See e.g. In re Methyl Tertiary Butyl Ether Products Liability
Litigation*, 488 F.3d 112, 132 (2nd Cir. 2007); *PG & E Corp.*, 433 F.3d at 1125.

enforce Illinois's consumer protection laws against Countrywide in order to protect the welfare

of the citizens of Illinois.  The pecuniary interest language cited by Countrywide might be

relevant if Countrywide was the debtor, as in the *First Alliance* case.  But here, Illinois is not

seeking money from any of the debtors and thus is not protecting any pecuniary interest of the

State in the property of the debtor or its estate.

Rather than protecting its pecuniary interest, the Attorney General's suit is clearly an

action to further the public interest.  As described by the *Lann* Court,

> The Consumer Fraud Act confers upon the Attorney General certain investigative and
> administrative duties to combat unlawful business practices.  Section 7 of the Act
> authorizes the Attorney General to bring an action on behalf of the people and in the
> public interest to enjoin any proscribed act or practice. (citation omitted)…
>
> Even though the transactions underlying this action arose between individual consumers
> and the defendant, the action stems from the Attorney General's duty to enforce the
> Consumer Fraud Act.  An action filed by the Attorney General under the Act is
> essentially a law enforcement action designed to protect the public, not to benefit private
> parties.  The statute expressly authorizes the Attorney General to enjoin illegal practices
> and to collect actual damages. (citation omitted)  Both remedies serve to prevent
> continued violations of the Act, and may promote enforcement of the law.

225 Ill. App.3d at 239-240, 587 N.E.2d at 523-4, 167 Ill.Dec. at 254-55.

The text of the Consumer Fraud Act also ensures that actions are only brought by the Attorney

General under this Act when ". . . proceedings would be in the public interest . . .."  815 ILCS

505/7.**.** As an action in furtherance of the public interest, Plaintiff's cause of action falls directly

under the police or regulatory powers exception to removal in section 1452.  *See MTBE Products*

*Liability Litigation*, 488 F.3d at 133 (holding that California and New Hampshire suits against

corporations for use of MTBE in gasoline fell within section 1452's police or regulatory

exception to removal given that "[t]he California and New Hampshire actions relate primarily to

matters of public health and welfare, and the money damages sought will not inure, strictly

speaking, to the economic benefit of the states."); *PG & E Corp.*, 433 F.3d at 1125-26 (holding

that state and city claims for restitution fell within the police or regulatory exception to removal because they "did not primarily advance the government's pecuniary interests" and such claims were "fundamentally law enforcement actions designed to protect the public.")

Moreover, not only does the *First Alliance* case cited by Countrywide fail to support Countrywide's position, it directly contradicts it. In *First Alliance*, Illinois and Massachusetts filed consumer protection actions in their respective state courts concerning First Alliance's lending practices. The district court held that the actions brought by the various government entities – including Illinois' action brought under the Consumer Fraud Act for an injunction, rescission, restitution and fines – all came within the scope of the police or regulatory exception to the automatic stay provision. *FTC v. First Alliance Mort. Co.*, *(In re First Alliance Mort. Co.)*, 264 B.R. at 651. Just as in *First Alliance*, the Attorney General's action against Countrywide is clearly brought in the exercise of her police and regulatory duties. Therefore, this cause of action cannot be removed to federal court pursuant to 28 U.S.C. §1452.

> B.    In the Alternative, This Court Should Remand this Case to State Court On Equitable Grounds

Even assuming arguendo that federal bankruptcy jurisdiction exists, which it does not, and assuming the Attorney General's action is not brought pursuant to her police and regulatory powers, which it is, Section 1452(b) authorizes the Court to remand this case "on any equitable ground." Likewise, 28 U.S.C. §1334(c) sets forth the bases for discretionary abstention.[9]

The factors considered in determining discretionary abstention and remand based on equitable grounds look at issues of judicial economy, the effect on bankruptcy case

---

[9] Similarly, assuming arguendo that bankruptcy jurisdiction exists over some portion of Plaintiff's claims, this Court should decline to exercise any supplemental jurisdiction over non-bankruptcy-related claims because (1) the claims raise a complex issue of State law, (2) the claims substantially predominate over any bankruptcy-related claims, and (3) this is an exceptional situation where there are compelling reasons of comity, fairness and judicial economy that warrant this Court declining to exercise any supplemental jurisdiction. 28 U.S.C. §1367(c)(1), (2) & (4).

administration, predominance of state law issues, the expertise of the state court, comity considerations, existence of other federal jurisdictional bases, and the presence of other parties not subject to bankruptcy jurisdiction.  *See In re Chapman,* 132 B.R. 153, 157-158 (Bankr. N.D. Ill. 1991) (listing abstention and remand factors).  These factors strongly support remand.  First, it is apparent that Countrywide, while arguing bankruptcy jurisdiction to support its petition for removal, is not seeking to have the Attorney General's suit heard by any of the various bankruptcy courts which have jurisdiction over any of the 8,347 bankruptcy cases.  In fact, Countrywide states in its Amended Notice that it will file a motion to stay any referral to bankruptcy court should this Court find there is bankruptcy jurisdiction present here.  Amended Notice at ¶45.  Second, although Countrywide asserts federal bankruptcy jurisdiction, less than 2% (8,347 of 451,334) of the loans secured by Illinois real estate as identified by Countrywide belonged to debtors filing for bankruptcy.  Third, the Attorney General's case is based solely on state law causes of action.  Fourth, the state court has expertise in consumer protection matters.  Finally, considerations of comity and respect for state law likewise support remand.  The Illinois Attorney General chose the appropriate forum for her to protect the rights of Illinois consumers; equity dictates that this choice be given deference and that this cause of action be remanded to state court.[10]

---

[10] Although Countrywide does not appear to argue that bankruptcy jurisdiction exists here because Plaintiff's claims are "related to" bankruptcy proceedings, if the Court were to find that "related to" bankruptcy jurisdiction exists, the Court must nonetheless abstain from hearing the case and remand it.  Under the mandatory abstention standards of 28 U.S.C. §1334(c)(2), the court must abstain if bankruptcy jurisdiction is noncore,  if §1334 is the only basis for federal jurisdiction, the action has been commenced in state court, and it can be timely adjudicated in the state forum.  *See Foushee v. Griffin*, 494 F.Supp2d 898, 899 (N.D. Ill. 2007).  As stated in Plaintiff's Rule 9027(e)(3) Statement, the matter here is noncore.  As to the other factors, there is no other basis for federal jurisdiction, this action was commenced in state court, and ,if the case is remanded, it can be timely adjudicated.

<u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests this Court remand this matter back to the

Circuit Court of Cook County, Illinois for further proceedings.


Dated:  August 20, 2008                            Respectfully submitted,

                                                   LISA MADIGAN, IN HER OFFICIAL
                                                   CAPACITY AS ATTORNEY GENERAL OF
                                                   ILLINOIS,


                                                   /s/ Veronica L. Spicer
                                                   _____
                                                   VERONICA L. SPICER
                                                   Assistant Attorney General



LISA MADIGAN
Attorney General of Illinois

DEBORAH HAGAN, Chief
Consumer Protection Division

JAMES D. KOLE, Chief
Consumer Fraud Bureau

CECILIA ABUNDIS
SUSAN N. ELLIS
JENNIFER FRANKLIN
THOMAS JAMES
SHANTANU SINGH
VERONICA L. SPICER
Assistant Attorneys General
Telephone: 312-814-3000

100 W. Randolph St., 12th Floor
Chicago, IL 60601