## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 08CV4210 |
| COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., FULL SPECTRUM LENDING, COUNTRYWIDE HOME LOANS SERVICING LP, and ANGELO MOZILO, | ) ) ) ) ) ) ) | Judge Elaine E. Bucklo |
| Defendants. | ) ) | |

## DEFENDANTS' MOTION FOR LEAVE
## TO FILE OVERSIZED BRIEF INSTANTER

Defendants Countrywide Financial Corporation, Countrywide Home Loans, Inc., Full Spectrum Lending, Countrywide Home Loans Servicing, LP, and Angelo Mozilo ("Defendants"), through their undersigned counsel, hereby respectfully move this Court for leave to file the attached, oversized Memorandum in Opposition to Plaintiff's Motion to Remand instanter.  In support of their motion, Defendants state as follows:

1.      On August 14, 2008, Defendants filed their Amended Notice of Removal, which set forth three separate bases for removal jurisdiction to this Court – substantial federal question, federal officer, and bankruptcy.  (Docket No. 12)  The Amended Notice was 22 pages long.

2.      On August 20, 2008, Plaintiff filed their Motion to Remand.  (Docket No. 18)  Plaintiffs sought leave to file an oversized (23-page) memorandum in support of their Motion to Remand, citing the "complex legal issue[s]" in Defendants' Amended Removal Notice that

required additional pages for Plaintiff to "sufficiently elucidate and analyze." (Docket No. 20) The Court granted Plaintiff's motion for leave to file its oversized brief. (Docket No. 23)

3.      Given the acknowledged complexities inherent in the three separate bases for removal that Defendants have proffered, Defendants are unable to fully address the arguments Plaintiff makes in its oversized brief within fifteen pages. Defendants' Memorandum therefore is 18 pages long.

4.      By seeking leave to file a brief in excess of fifteen pages, Defendants do not seek to impose any additional hardship upon this Court or Plaintiff, but rather request leave merely so that a complete presentation of the issues can be made.

WHEREFORE, Defendants respectfully request that this Court enter an order granting them leave to file their Memorandum in Opposition to Plaintiff's Motion to Remand, which consists of 18 pages, *instanter*, and for such other and further relief as the Court deems appropriate.

Respectfully submitted,

Dated: September 4, 2008

   __/s/ Andrew J. Schaefer____
   Tyrone C. Fahner
   Andrew J. Schaefer
   David K. Cole, III
   MAYER BROWN LLP
   71 South Wacker Drive
   Chicago, IL 60606-4637
   (312) 782-0600 (telephone)
   (312) 701-7711 (facsimile)

   *Attorneys for Defendants Countrywide*
   *Financial Corporation, Countrywide Home*
   *Loans, Inc., Full Spectrum Lending,*
   *Countrywide Home Loans Servicing, LP,*
   *and Angelo Mozilo*

OF COUNSEL

John H. Beisner
Brian D. Boyle
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C.  20006-4001
(202) 383-5300 (telephone)
(202) 383-5414 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 4, 2008, he caused a copy of the foregoing Notice of Motion and Motion for Leave to File Oversized Brief Instanter, together with Defendants' Memorandum in Opposition to Plaintiff's Motion to Remand attached thereto, to be served on counsel of record for Plaintiff, pursuant to Electronic Case Filing.

/s/ Andrew J. Schaefer

_____

5221651.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Case No. 08CV4210** |
| COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., FULL SPECTRUM LENDING, COUNTRYWIDE HOME LOANS SERVICING LP, and ANGELO MOZILO, | ) ) ) ) ) ) | **JUDGE BUCKLO** |
| Defendants. | ) ) ) | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

# <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ..................................................................................................................... 3

I.  THIS COURT HAS JURISDICTION OVER THIS ACTION ........................................ 3

    A.  Plaintiff's Suit Requires The Resolution Of Substantial, Disputed Federal
        Questions .......................................................................................................... 3

    B.  Federal Officer Removal Is Proper ................................................................ 10

    C.  Alternatively, Bankruptcy Jurisdiction Is Proper ........................................... 14

II.  THE COURT NEED NOT DECIDE THE REMAND MOTION NOW ...................... 16

CONCLUSION ................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bd. of Trs. of Teachers' Ret. Sys. of Ill. v. WorldCom, Inc.,*
    244 F. Supp. 2d 900 (N.D. Ill. 2002) ............................................................. 16

*Blankenship v. Bridgestone Americas Holding, Inc.,*
    467 F. Supp. 2d 886 (C.D. Ill. 2006) ............................................................. 7

*Brown v. Vickers Employees Credit Union,*
    162 F. Supp. 2d 528 (S.D. Miss. 2001) ........................................................ 8

*Cohens v. Virginia,*
    19 U.S. (6 Wheat.) 264 (1821) ...................................................................... 8

*Devers v. Merck & Co.,*
    No. CIV. S-06-617 LKK/PAN, 2006 WL 1377086 (E.D. Cal. May 18, 2006) .................... 17

*Evans v. Courtesy Chevrolet II, LP,*
    423 F. Supp. 2d 669 (S.D. Tex. 2006) ........................................................... 9

*Fiore v. First Am. Title Ins. Co.,*
    No. 05-474, 2006 U.S. Dist. LEXIS 60952 (S.D. Ill. Aug. 28, 2006) ................... 1, 5

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,*
    463 U.S. 1 (1983) ..................................................................................... 9

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,*
    545 U.S. 308 (2005) ........................................................................... passim

*Hardin v. Merck & Co.,*
    No. C 07-0070 SBA, 2007 WL 1056790 (N.D. Cal. Apr. 5, 2007) ......................... 17

*Heatsie v. Community Bank of Greater Peoria,*
    690 F. Supp. 716 (N.D. Ill. 1988) ............................................................ 5, 7

*In re Cardizem CD Antitrust Litig.,*
    481 F.3d 355 (6th Cir. 2007) ..................................................................... 9

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
    No. MDL 1361, 2001 WL 64775 (D. Me. Jan. 26, 2001) ................................... 10

*In re Hardwicke Cos.,*
    64 B.R. 113 (Bankr. S.D.N.Y. 1986) ........................................................... 16

*In re Ivy,*
    901 F.2d 7 (2d Cir. 1990) ......................................................................... 18

# TABLE OF AUTHORITIES (continued)

Page(s)

*In re Mid-Atlantic Toyota Antitrust Litig.,*
    605 F. Supp. 440 (D. Md. 1984) ...................................................................10

*In re Milford Group, Inc.,*
    164 B.R. 892 (Bankr. M.D. Pa. 1993) .........................................................15

*Isaacson v. Dow Chem. Co.,*
    517 F.3d 129 (2d Cir. 2008)..........................................................................14

*Jackson v. Johnson & Johnson, Inc.,*
    No. 01-2113 DA, 2001 U.S. Dist. LEXIS 22329 (W.D. Tenn. Apr. 3, 2001)........................16

*Jackson v. South Holland Dodge, Inc.,*
    755 N.E.2d 462 (Ill. 2001) ....................................................................2, 4, 6

*Jefferson County v. Acker,*
    527 U.S. 423 (1999)......................................................................................11

*Johnson v. Matrix Fin. Servs. Corp.,*
    820 N.E.2d 1094 (Ill. App. Ct. 2004) ....................................................2, 4, 5

*Lanier v. Assocs. Fin., Inc.,*
    499 N.E.2d 440 (Ill. 1986)..........................................................................4, 5

*League to Save Lake Tahoe v. B.J.K. Corp.,*
    547 F.2d 1072 (9th Cir. 1976) .......................................................................6

*Louiville & Nashville R.R Co. v. Mottley,*
    211 U.S. 149 (1908)........................................................................................6

*Magnin v. Teledyne Continental Motors,*
    91 F.3d 1424 (11th Cir. 1996) .....................................................................14

*Med. Soc'y of the State of New York v. Conn. Gen. Corp.,*
    187 F. Supp. 2d 89 (S.D.N.Y. 2001).............................................................17

*Merrell Dow Pharms., Inc. v. Thompson,*
    478 U.S. 804 (1986)........................................................................................9

*Montana ex rel. McGrath v. Eli Lilly & Co.,*
    07-CV-1933 .....................................................................................................7

*Ormet Corp. v. Ohio Power Co.,*
    98 F.3d 799 (4th Cir. 1996) ...........................................................................9

## <u>TABLE OF AUTHORITIES</u> (continued)

**Page(s)**

*Patterson v. Regions Bank,*
    No. 06-CV-469-DRH, 2006 WL 3407852 (S.D. Ill. Nov. 27, 2006) .......................7

*People ex rel. Hartigan v. Lann,*
    587 N.E.2d 521 (Ill. App. Ct. 1992) ...........................................................15, 16

*People ex rel. Scott v. Regency Industries, Inc.,*
    422 N.E.2d 259 (Ill. App. Ct. 1981) ...........................................................15, 16

*Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills of Mass. Inc.,*
    352 F.3d 33 (1st Cir. 2003) ......................................................................................9

*Tench v. Jackson Nat'l Life Ins. Co.,*
    No. 99-C-5182, 1999 WL 1044923 (N.D. Ill. Nov. 12, 1999) (Bucklo, J.) .............1, 5, 17, 18

*Vill. of DePue v. Exxon Mobil Corp.,*
    No. 07-2311, 2008 U.S. App. LEXIS 17110 (7th Cir. Aug. 11, 2008) ....................8

*Watson v. Philip Morris Cos.,*
    127 S. Ct. 2301 (2007) ............................................................................... passim

**STATUTES**

815 ILCS 120/5a ...........................................................................................................14

815 ILCS 505/10a ..........................................................................................................14

815 ILCS 505/10b ............................................................................................................4

11 U.S.C. § 157(b)(2)(C) ..............................................................................................15

11 U.S.C. § 541(a) .........................................................................................................15

12 U.S.C. §§ 2601 *et seq.* .............................................................................................1

12 U.S.C. § 2607 .............................................................................................................9

12 U.S.C. § 2614 .............................................................................................................9

15 U.S.C. §§ 1601 *et seq.* .............................................................................................1

15 U.S.C. § 1635 .............................................................................................................9

15 U.S.C. § 1640 .............................................................................................................9

28 U.S.C. § 1331 .....................................................................................................4, 7, 8

<u>**TABLE OF AUTHORITIES (continued)**</u>

**Page(s)**

28 U.S.C. § 1441.................................................................................................3, 7, 8

28 U.S.C. § 1442(a)(1)...................................................................................2, 10, 11, 13

## INTRODUCTION AND BACKGROUND

Following the Defendants' August 14 motion to stay and the MDL Panel's announcement of a September 25 hearing on Defendants' motion to consolidate this and other actions into a single proceeding, Plaintiff filed this motion to remand on August 20.  Plaintiff apparently hopes that the case will be returned to state court before any MDL transferee judge can consider similar jurisdictional issues in related cases in a uniform fashion.[1]  This Court should reject Plaintiff's attempts to circumvent the MDL process and should defer any ruling on the remand motion until after the MDL Panel has ruled.  *See, e.g., Tench v. Jackson Nat'l Life Ins. Co.*, No. 99-C-5182, 1999 WL 1044923, at *1 (N.D. Ill. Nov. 12, 1999) (Bucklo, J.) (staying action and not ruling on remand motion where MDL transferee judge was likely to face similar jurisdictional issues).

Even if it were otherwise necessary or appropriate to address Plaintiff's motion now, federal jurisdiction exists for each of the three reasons the Defendants identified in their Amended Notice of Removal.

*First*, substantial federal question jurisdiction plainly exists here.  Contrary to Plaintiff's suggestions, this is not a case that "might deal with" issues under the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*  (Remand Mem. at 11.)  This is instead a case in which addressing Plaintiff's core allegations *will require* resolution of myriad TILA and RESPA issues.  At the heart of Plaintiff's case are allegations that Countrywide misrepresented or failed to disclose the terms of its mortgage loans (implicating TILA), and provided improper incentives and compensation for mortgage brokers who allegedly marketed its loans to consumers (implicating RESPA).  The federal issues present here are therefore substantial under controlling law.

---

[1]    For a more detailed discussion of the cases' background, Defendants refer the Court to their Motion to Stay, Docket No. 14.

Nor, as Plaintiff contends, is this a case in which these substantial federal questions will only be raised through affirmative defenses. On the contrary, the Illinois Supreme Court has held in analyzing similar consumer fraud claims that courts must look to TILA or RESPA to decide whether plaintiff has established its prima facie case. *See Jackson v. South Holland Dodge, Inc.*, 755 N.E.2d 462, 470 (Ill. 2001); *see also Johnson v. Matrix Fin. Servs. Corp.*, 820 N.E.2d 1094, 1106 (Ill. App. Ct. 2004). Plaintiff's only answer is to rely on non-controlling decisions of federal courts on inapplicable issues of preemption law. But on the crucial question whether federal law is part of a plaintiff's case-in-chief or an affirmative defense, Illinois decisions hold that it is the former. Plaintiff's claims, therefore, raise disputed, substantial federal issues, conferring jurisdiction upon this Court. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

*Second*, federal officer removal exists under 28 U.S.C. § 1442(a)(1). Contrary to Plaintiff's motion, the basis for federal officer removal here is not simply that the defendant is subject to a complex federal regulatory framework. On the contrary, by servicing federally insured and federally guaranteed loans pursuant to specific federal approvals, Countrywide Home Loans Servicing LP is performing a service for the government; indeed, it is performing a service that the government would otherwise likely have to perform itself. *Watson v. Philip Morris Cos.*, 127 S. Ct. 2301, 2308 (2007). This case thus falls squarely within the holding of the Supreme Court's decision in *Watson*.

Plaintiff's remaining argument to the contrary is to invent a requirement that in order to support federal officer removal, there must be some sort of "document memorializing formal delegation of legal authority." (Remand Mem. at 12-13.) That assertion appears nowhere in the text of the *Watson* decision. *Watson* held that the availability of federal officer removal turns not

on the existence of a formal "document" but on whether the defendant is assisting a federal officer in administering a federal program, *Watson*, 127 S. Ct. at 2308, a requirement that is satisfied here for multiple reasons that Plaintiff never addresses.

*Third*, Plaintiff's arguments against bankruptcy jurisdiction are misplaced because Plaintiff is asserting claims that, in many instances, are the property of the estate of bankruptcy debtors whose loans were originated or serviced by a Countrywide entity. Plaintiff admits that the claims it is championing would, if asserted by the individual debtors themselves under the same Illinois statutes under which Plaintiff sues here, be property of their bankruptcy estates. (Remand Mem. at 18 n.6.) That concession is enough to confer bankruptcy jurisdiction.

## ARGUMENT

## I.    THIS COURT HAS JURISDICTION OVER THIS ACTION

This Court has subject matter jurisdiction over this action, and removal is proper, for the reasons set forth in Defendants' Amended Notice of Removal. As demonstrated below, Plaintiff's responses in support of its remand motion fail.

### A.    Plaintiff's Suit Requires The Resolution Of Substantial, Disputed Federal Questions

Removal is proper, first, because resolving Plaintiff's claims requires the resolution of substantial federal issues. (Amended Notice of Removal (Docket No. 12) ¶¶ 7-20.) Section 1441(a) of Title 28 authorizes the removal of "any civil action" in which the district court would have had original jurisdiction. Section 1441 removal is proper here so long as the action could have originally been brought in federal district court. *See Grable*, 545 U.S. at 312 ("Darue was entitled to remove the quiet title action if Grable could have brought it in federal district court originally as a civil action 'arising under the Constitution, laws, or treaties of the United States.'" (citation omitted)). As more fully set out in Defendants' Amended Notice of Removal, Plaintiff

3

could have originally brought this action in federal court under 28 U.S.C. § 1331 because Plaintiff's claims require the determination of substantial federal issues under TILA and RESPA. Section 505/10b of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") excludes any conduct that is governed by and complies with TILA or RESPA from ICFA's reach. *See* 815 ILCS 505/10b. Resolving Plaintiff's allegations regarding mortgage loan disclosures and broker compensation requires the resolution of substantial federal issues involving TILA and RESPA. Hence, substantial federal question removal is proper.

In seeking to defeat substantial federal question removal, Plaintiff misconstrues Illinois law, the Complaint, and the law of removal jurisdiction.

Plaintiff's primary contention is that section 505/10b is a defense, and therefore cannot support "arising under" jurisdiction. (Remand Mem. at 6-7.) Plaintiff is mistaken. As Illinois appellate courts applying section 505/10b have made clear, a plaintiff cannot state an ICFA claim regarding conduct governed by TILA or RESPA in this context unless the plaintiff pleads facts demonstrating the existence of a TILA or RESPA violation: "In other words, if the YSP [Yield Spread Premium] payment to Dolphin by Matrix was not violative of RESPA's antikickback provision, plaintiffs have no recourse under the Consumer Fraud Act; the reach of the Consumer Fraud Act simply does not extend beyond that of RESPA." *Johnson*, 820 N.E.2d at 1106; *see Jackson*, 755 N.E.2d at 470 (noting that, in order to "maintain a cause of action" under ICFA, Plaintiff must show that actions not in compliance with TILA); *Lanier v. Assocs. Fin., Inc.*, 499 N.E.2d 440, 447 (Ill. 1986) ("we believe that the Consumer Fraud Act's general prohibition of fraud and misrepresentation in consumer transactions did not require more extensive disclosure in the plaintiff's loan agreement than the disclosure required by the

comprehensive provisions of the Truth in Lending Act")[2]; *Fiore v. First Am. Title Ins. Co.*, No. 05-474, 2006 U.S. Dist. LEXIS 60952, at *10 (S.D. Ill. Aug. 28, 2006) ("Illinois courts have held that if an action does not violate RESPA, then there is no claim under ICFA.").

Thus, in the context of Plaintiff's allegations about alleged nondisclosures and other actions in connection with the origination of mortgages, Plaintiff will be obliged to show that Countrywide's conduct failed to comply with TILA and RESPA—or else it will not meet its burden of proof.[3]  Plaintiff's case-in-chief therefore necessarily raises substantial questions under TILA and RESPA.

Notwithstanding these controlling decisions, Plaintiff contends that courts "uniformly" hold that section 505/10b is a defense.  (Remand Mem. at 7.)  Plaintiff does not cite to any Illinois appellate cases that actually support that assertion.  Plaintiff relies on (1) a federal district court decision that predates both *Johnson* and *Jackson* and does not address whether TILA or RESPA provide the substantive standard of conduct in a case like this (*Heatsie v. Community Bank of Greater Peoria*, 690 F. Supp. 716 (N.D. Ill. 1988)), and (2) a Supreme Court case establishing the unremarkable rule that *if* an issue is a defense, then it cannot provide the basis

---

[2]    Although *Lanier* referred to compliance with TILA as "a defense to liability," 499 N.E.2d at 447, subsequent cases have made clear that *Lanier* did not mean to suggest that compliance with TILA was a "defense" in the technical sense, but in the sense that it negated an element of the plaintiff's claim.

[3]    Plaintiff repeatedly asserts that the interest rates, amortization, and other terms applicable to the loans were not adequately disclosed, thus implicating TILA. (*See, e.g., id.* ¶¶ 158-171, 297(b), (d), (f), (h).)  Plaintiff also alleges that Countrywide excessively or otherwise inappropriately compensated brokers for their services by giving them incentives to improperly inflate revenue they could earn from yield spread premiums ("YSPs"), the difference between an interest rate for which a borrower qualifies and the (higher) rate he or she is charged, thus implicating TILA. (*Id.* ¶¶ 172-193; *see also id.* ¶ 183 ("By slightly increasing an already low 'teaser' rate, increasing the margin, and adding a three-year prepayment penalty, brokers could maximize the YSP Countrywide paid them."); *id.* ¶ 298(e) (Countrywide "[r]eward[ed] brokers for selling loans with certain risky loan features such as prepayment penalties without ensuring that borrowers received a benefit from the risky features"); *id.* ¶ 298(f) (Countrywide "[s]tructur[ed] the compensation for option ARMS in such a way that brokers were incentivized to sell a product that was riskier than necessary—to the exclusion of other products—in order to obtain the maximum yield spread premium possible.").)  (*See* Amended Notice of Removal ¶¶ 9-16.)

for removal jurisdiction. (Remand Mem. at 7 (citing *Louiville & Nashville R.R Co. v. Mottley*, 211 U.S. 149 (1908)).)

Those decisions do not establish—"uniformly" or otherwise—that section 505/10b is a defense in these circumstances. Instead, controlling decisions of Illinois appellate courts (including the Illinois Supreme Court) applying 505/10b have concluded that an ICFA plaintiff challenging conduct governed by TILA or RESPA has an affirmative duty to plead facts showing that the relevant federal statute was violated. *See Jackson*, 755 N.E.2d at 470.[4]  That proves that substantial federal jurisdiction exists here.

Plaintiff also contends that there is no substantial federal question jurisdiction because its complaint contains an insufficient number of allegations that require the resolution of substantial questions of federal law. (Remand Mem. at 8.)  In particular, Plaintiff asserts that the Court need not resolve the TILA and RESPA issues that Countrywide identifies because "even if the six violations targeted by Countrywide were taken out of Plaintiff's Complaint, there would remain 33 reasons that Countrywide could be liable for violating" ICFA.  (*Id.*)  But the mere possibility that *some* of the allegations in the Complaint—even a numerical majority—may not implicate TILA or RESPA does not mean that substantial federal question jurisdiction is lacking.

In any event, allegations that Countrywide misrepresented or failed to disclose the terms of its mortgage loans and improperly compensated mortgage brokers that it used to market its loans are at the heart of Plaintiff's complaint.  For example, the Complaint's very first substantive paragraph asserts that "Countrywide, in pursuit of market share, engaged in unfair and deceptive practices including the loosening of underwriting standards, structuring unfair loan

---

[4]     Plaintiff's assertion that "Illinois courts are perfectly able to analyze RESPA and TILA" in applying section 505/10b (Remand Mem. at 10) misses the mark.  Many actions removed to federal court could proceed in state court, as state courts generally have concurrent jurisdiction.  *See, e.g., League to Save Lake Tahoe v. B.J.K. Corp.*,

products with risky features, engaging in *misleading marketing and sales techniques*, and *incentivizing employees and brokers* to sell more and more loans with risky features." (Compl. at 2 (emphasis added); *see also id.* ¶¶ 158-193; *id.* ¶ 297(b), (d), (f), (h); *id.* ¶ 298(e), (f).) Thus, Plaintiff's core case focuses on conduct governed by TILA and RESPA, and Plaintiff has no basis for alleging that the Court need not pass on that conduct. *See, e.g., Montana ex rel. McGrath v. Eli Lilly & Co.*, 07-CV-1933 (JBW), 2008 U.S. Dist. LEXIS 10355, at *13-14 (E.D.N.Y. Feb. 12, 2008) (removal proper under *Grable* where federal issues were embedded in allegations "central" to plaintiff's case, notwithstanding existence of other claims).

As a fallback to its contention that an insufficient number of its allegations implicate TILA or RESPA to confer substantial federal question jurisdiction over this case, Plaintiff mistakenly asserts that TILA and RESPA need not be interpreted to adjudicate its claims. (*See* Remand Mem. at 9-10.) Illinois law, as explained by the Illinois Supreme Court, requires Plaintiff to show that the conduct challenged here—which relates to the adequacy of mortgage term disclosures and the propriety of mortgage broker compensation—violated TILA or RESPA. None of Plaintiff's authorities holds otherwise. *Heatsie* predates controlling Illinois precedent, and, in any event, never addresses RESPA (presumably because the defendants there never raised it). *See Heatsie*, 690 F. Supp. at 721 ("Alliance points to no provision of the TILA regulating referral agreements between brokers and lenders . . . ."). And the other decisions to which Plaintiff cites did not involve section 505/10b or any similar state-law provision, and are thus irrelevant. *See Patterson v. Regions Bank*, No. 06-CV-469-DRH, 2006 WL 3407852 (S.D. Ill. Nov. 27, 2006) (addressing complete preemption under National Banking Act and Depository Deregulation and Monetary Control Act); *Blankenship v. Bridgestone Americas Holding, Inc.*,

---

547 F.2d 1072, 1075 n.7 (9th Cir. 1976) ("Of course, state courts have concurrent jurisdiction over Section 1331 suits . . . ."). Yet jurisdiction is proper because § 1441 does not require exclusive federal jurisdiction.

467 F. Supp. 2d 886, 898-99 (C.D. Ill. 2006) (no substantial federal question where complaint merely referred to federal standards to show defendants had notice that conduct was potentially harmful); *Brown v. Vickers Employees Credit Union*, 162 F. Supp. 2d 528, 532-33 (S.D. Miss. 2001) (no contention that state law required resort to federal law).

For similar reasons, Plaintiff's statement that "[t]here is no indication that Congress intended for federal courts to decide all cases that ***might*** deal with TILA or RESPA issues" misses the point. (*See* Remand Mem. at 11 (emphasis added).) This is not a case that "might deal with TILA or RESPA issues"; Plaintiff's core allegations rise or fall on interpretation and application of TILA and RESPA.

Plaintiff also argues that even if the Court has jurisdiction, it should exercise its "discretion" not to exercise that jurisdiction because this case was brought by the Illinois Attorney General. (*See* Remand Mem. at 10.) That is legally insupportable. If this case could have been brought under § 1331, then removal is proper as a matter of law, and the Court must exercise jurisdiction. *See Grable*, 545 U.S. at 312; *cf. Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) (Marshall, C.J.) ("We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given.").

Plaintiff's principal legal authority for its contention that the Court should exercise its "discretion" to remand this case is the "*Younger* abstention" doctrine, which limits the ability of federal courts to interfere with pending state proceedings. (Remand Mem. at 11.) But *Younger* is wholly inapplicable to the propriety of a case removed to federal court, which is no longer "pending" in state court and which is subject to an entirely different set of rules. *See Vill. of DePue v. Exxon Mobil Corp.*, No. 07-2311, 2008 U.S. App. LEXIS 17110, at *15 (7th Cir. Aug. 11, 2008) ("Removal under 28 U.S.C. § 1441 simply does not leave behind a pending state

8

proceeding that would permit *Younger* abstention.").  Plaintiff offers no support for its assertion that a case meeting the requirements of the removal statute is *also* subject to the dictates of *Younger*.

In addition to being supported by the existence of substantial, disputed questions of federal law, the exercise of federal jurisdiction here will not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.  To the contrary, the interest in litigating this case in a federal forum is evidenced by the fact that both TILA and RESPA provide for private rights of action in certain circumstances. *See, e.g.*, 15 U.S.C. §§ 1635, 1640 (TILA); 12 U.S.C. §§ 2607, 2614 (RESPA); *see also Grable*, 545 U.S. at 317-18 (existence of a federal private right of action weighs in favor of federal question jurisdiction, while absence would weigh against) (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804 (1986)).  Plaintiff fails to address this point.  (Remand Mem. at 11-12.)

The fact that this case was originally brought by the Attorney General does not suggest that exercising jurisdiction will somehow upset a congressionally approved balance of federal and state judicial responsibilities.  Plaintiff's authorities on this purported subject do not actually address this question in a manner relevant here.  (Remand Mem. at 10-11.)[5]  And, in any event, federal courts regularly exercise jurisdiction over proceedings that, as here, involve attorney general plaintiffs suing on behalf of consumers. *See, e.g., In re Cardizem CD Antitrust Litig.*,

---

[5]     *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 F.3d 1 (1983) (concluding that Congress did not intend federal court jurisdiction over declaratory judgment actions by state tax authorities against ERISA-covered trusts because, although Congress had provided federal cause of action for ERISA-covered trusts, it had not provided federal cause of action against ERISA-covered trusts); *Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills of Mass. Inc.*, 352 F.3d 33, 41 (1st Cir. 2003) (concluding that federal question was "insubstantial" where primary dispute was contractual and federal law did not define rights at issue or create remedies); *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (allocation of Clean Water Act allowances raised substantial federal question providing federal jurisdiction over contractual claim regarding allowances' ownership); *Evans v. Courtesy Chevrolet II, LP*, 423 F. Supp. 2d 669, 671 (S.D. Tex. 2006) (concluding that TILA does not completely preempt all cases concerning conduct governed by it).

481 F.3d 355 (6th Cir. 2007); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2001 WL 64775 (D. Me. Jan. 26, 2001); *In re Mid-Atlantic Toyota Antitrust Litig.*, 605 F. Supp. 440 (D. Md. 1984).

Finally, disputes substantially identical to the present one are pending in at least six other cases in federal court—including an action filed by the State of Connecticut and recently removed to federal court on grounds substantially identical to those here. (*See* Ex. A hereto.) As noted in Defendants' motion to stay, several of those cases (*Sizemore* and *Leyvas*) were filed in federal court in the first instance, and all of them are being considered by the (federal) MDL Panel for transfer. That related disputes involving the same Countrywide borrowers already are pending in federal court (and, indeed, raise many of the exact same allegations and claims for relief)[6] confirms that the exercise of federal jurisdiction will not upset any "congressionally approved balance of federal and state judicial responsibilities."

**B.    Federal Officer Removal Is Proper**

This case also was properly removed under the federal officer removal statute, 28 U.S.C. 1442(a)(1). As more fully detailed in the Amended Notice of Removal (at ¶¶ 21-44), Countrywide Home Loans Servicing LP satisfies the federal officer removal standard because (1) it is a person acting under one or more federal officers, (2) a causal nexus exists between Plaintiff's claims and Countrywide Home Loans Servicing LP's conduct under federal officers, and (3) Countrywide Home Loans Servicing LP raises colorable federal defenses. *See* 28 U.S.C. § 1442(a)(1) (providing removal jurisdiction over "[a] civil action . . . against . . . any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an

---

[6]    For example, *Leyvas* and *Hursh*, which are putative class actions that were filed in federal court in the first instance, make many of the same allegations and allege many of the same (or very similar) claims for relief as the actions brought by the state attorneys general, including this case. (*See* Memorandum in Support of Defendants' Motion to Stay (Docket No. 16) at 4-6.)

official or individual capacity for any act under color of such office" (emphasis added));
*Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

Pursuant to the specific approvals and requirements detailed in the Amended Notice of Removal, the Secretary of Housing and Urban Development ("HUD") and the Secretary of the Veterans Administration ("VA") have delegated legal authority to Countrywide Home Loans Servicing LP in connection with the servicing of government-insured and government-guaranteed mortgage loans and is directing the conduct and acts of Countrywide Home Loans Servicing LP, such that Countrywide Home Loans Servicing LP is acting under the Secretaries of HUD and VA for purposes of 28 U.S.C. § 1442(a)(1). The servicing of federally-insured and guaranteed mortgage loans is something that, absent these regulations and approvals, a federal officer or agency (such as HUD or VA or their Secretaries) would likely have to do itself. Hence, Countrywide Home Loans Servicing LP is directly assisting the federal government in providing a service and is subject to federal officer jurisdiction. *See, e.g., Watson v. Philip Morris Cos.*, 127 S. Ct. 2301, 2308 (2007) (observing that federal officer removal would be appropriate where the removing party is "helping the Government to produce an item that it needs" or "performed a job that ... the Government itself would [otherwise] have had to perform."). (Amended Notice of Removal ¶¶ 22-42.) Countrywide Home Loans Servicing LP also identified colorable federal defenses in its Amended Notice of Removal. (*Id.* ¶ 43.)

In response, Plaintiff effectively concedes that Countrywide Home Loans Servicing LP is a "person" within the meaning of § 1442 (Remand Mem. at 12), and fails to address the final element of the analysis, the existence of colorable federal defenses. (*See* Remand Mem. at 12-14.)

Plaintiff's response instead focuses on whether Countrywide Home Loans Servicing LP is acting under a federal officer for purposes of § 1442. On this issue, Plaintiff's primary contention is that in order to avail itself of federal officer removal, Countrywide must produce a "document memorializing formal delegation of legal authority from a federal agency." (Removal Mem. at 12.) No such requirement exists—and plaintiff does not cite any supporting authority for such a proposition. Plaintiff asserts that *Watson* requires "a formal delegation of legal authority, not a vague directive of delegation created from regulations or letters." (Remand Mem. at 13.) But *Watson* does not support that proposition. *Watson* instead holds a person acts under a federal officer for § 1442 purposes if two conditions are met: (1) a federal officer exercises "'subjugation,' 'guidance,' or 'control'" over the person and (2) the person undertakes "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." 127 S. Ct. at 2307 (emphasis added). Similarly, a private party acts under a federal officer when it "perform[s] a job that," "at least arguably," "the Government itself would [otherwise] have had to perform." *See id.* at 2308.

Indeed, many of the historical examples of persons "acting under" a federal officer discussed in *Watson* involve extremely informal delegation. For instance, a U.S. Army corporal was "acting under" a federal officer when he helped federal revenue officers attempt to arrest a distiller—irrespective of whether the corporal first demanded an official certificate of authority. *Id.* at 2306. In fact, the Court made clear in *Watson* that "the removal statute applies to private persons 'who lawfully assist' the federal officer 'in the performance of his official duty.'" *Id.* at 2307.

Thus, Plaintiff's proposed "formal delegation" test cannot be squared with *Watson*. In *Watson* itself, the defendants failed to establish the existence of federal jurisdiction not because

they lacked a "document," but because the Court "found no evidence of any delegation of legal authority from the" federal agency to them. *See id.* at 2309. The only delegation evidence in *Watson* was that the government closely regulated the tobacco-manufacturer defendants by monitoring their conduct. The *Watson* defendants asserted that they acted under federal officers because they tested their cigarettes under the Federal Trade Commission's watchful eye. *See id.* at 2304. In rejecting that proposition, the Supreme Court observed that there was no evidence "of some such special relationship" between the tobacco companies and the government showing an actual delegation of authority. *Id.* at 2310. Indeed, the defendants in *Watson* could not be said to perform a function that, in their absence, the federal government would have had to perform.

Plaintiff's attempt to analogize Countrywide Home Loans Servicing LP to the defendant in *Watson* fails. Countrywide Home Loans Servicing has identified much more than the mere federal regulation at issue in that case—and, indeed, has identified the kind of delegation that would be sufficient under *Watson* to confer federal officer removal. Countrywide Home Loans Servicing LP has pointed not just to a set of regulations but also to specific approvals and requirements pursuant to which the Secretaries of HUD and VA have delegated legal authority to Countrywide Home Loans Servicing LP in connection with the servicing of government-insured and government-guaranteed mortgage loans. Through those approvals and requirements, those federal officers are directing the conduct of Countrywide Home Loans Servicing LP, such that Countrywide Home Loans Servicing LP is acting under the Secretaries of HUD and VA for purposes of 28 U.S.C. § 1442(a)(1). The servicing of federally insured and guaranteed mortgage loans is something that, absent these approvals and requirements, HUD and the VA would have to perform. *See id.* at 2307-08.

Finally, Plaintiff does not (and could not) challenge the remaining element establishing the propriety of federal officer removal, namely, that Countrywide Home Loans Servicing LP raises colorable federal defenses. (*See* Remand Mem. at 12-14; *cf.* Amended Notice of Removal ¶ 43.) Countrywide Home Loans Servicing LP acted in compliance with federal law—including the HUD, VA, and GNMA regulations and requirements and the specific HUD, VA, and GNMA approvals of its servicing responsibilities—in its servicing of federally-insured mortgage loans. Thus, Countrywide Home Loans Servicing LP raises colorable federal defenses that arise out of its duties pursuant to its relationship with the government in servicing federally-insured mortgage loans. *See, e.g., Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 139 (2d Cir. 2008) (compliance with federal law can provide a colorable federal defense for purposes of federal officer removal); *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1428 (11th Cir. 1996) (colorable federal defense where "[a]t least part of Smith's defense is that he acted within the scope of his federal duties, that what he did was required of him by federal law, and that he did all federal law required."). Accordingly, federal officer removal jurisdiction has been properly invoked by Countrywide.

## C.    Alternatively, Bankruptcy Jurisdiction Is Proper

In the event that the Court were to find removal improper under both substantial federal question and federal officer grounds, removal would still be proper based on bankruptcy jurisdiction. (Amended Notice of Removal ¶¶ 45-50.) The claims asserted by the State on behalf of Illinois residents who borrowed money from Countrywide, and later filed bankruptcy petitions, fall within the bankruptcy courts' "arising in" jurisdiction under title 11 of the United States Code. As Plaintiff concedes, ICFA and the Illinois Fairness in Lending Act permit aggrieved persons to file individual actions. (*See* Remand Mem. at 18 n.6 (citing 815 ILCS 505/10a, 815 ILCS 120/5(a)).) Plaintiff also concedes that "any such individual action would be

14

an asset of the bankruptcy estate if the person were a debtor in bankruptcy." *Id.* The individual claims of debtors are undisputedly property of bankruptcy estates. 11 U.S.C. § 541(a); *Id.* Assets of bankruptcy estates are subject to the exclusive jurisdiction of the bankruptcy courts.[7]

In an effort to escape federal bankruptcy jurisdiction, Plaintiff asserts that, when brought by the Attorney General, the exact same claims are *not* the property of the debtors' estates. (Remand Mem. at 16 ("These claims belong to the State of Illinois alone; they do not belong to any individual or any individual's bankruptcy estate.").) Yet Plaintiff's authorities—which do not address bankruptcy law—do not support this sweeping proposition. *People ex rel. Hartigan v. Lann*, 587 N.E.2d 521, 526 (Ill. App. Ct. 1992) stands for the narrow proposition that where "when the Attorney General seeks restitution under the Consumer Fraud Act, individual consumers may not be considered party plaintiff for discovery purposes only." *Lann* relied in part on the premise that the defendants did not need party-like discovery on individual consumers in order to assess defendants' liability. *Id.* at 525-26.

Plaintiff's other cited case, *People ex rel. Scott v. Regency Industries, Inc.*, 422 N.E.2d 259 (Ill. App. Ct. 1981), was similarly narrow and does not assist Plaintiff here. There, the court analyzed a provision of ICFA stating that consumers are not barred from asserting against assignees of unlawfully originated contracts the same claims and defenses they could have asserted against the assignor. *Id.* at 260-62. The Illinois Attorney General asserted that this provision permitted him to bring an ICFA claim directly against an assignee of such contracts. *Id.* at 261-62. The court rejected this argument, holding that "[t]he statement of section 2D that the transfer or assignment 'does not bar' contains no indication of an intention to create a new

---

[7] To the extent such claims are asserted as counterclaims to Countrywide's claim for amounts due under the mortgage, such counterclaims are clearly core bankruptcy matters. 11 U.S.C. § 157(b)(2)(C); *See. also, In re Milford Group, Inc.*, 164 B.R. 892, 897 (Bankr. M.D. Pa 1993) (state law counterclaims of a debtor are within a

cause of action against assignees and transferees, but merely indicates an intention to prevent them from being in the position of holders in due course." *Id.* at 262.  If anything, *Regency Industries* analogized rather than distinguished the rights of the Attorney General and consumers, noting that "even a consumer, suing in his own behalf, would not be entitled to much of the relief requested by the Attorney General." *Id.* at 262.  Further, *Lann* and *Regency Industries* did not discuss bankruptcy in any way, shape or form, or indicate that the claims, if asserted by the Attorney General on behalf of debtors, would not be property of the debtors' bankruptcy estates. Accordingly, because the claims pressed by the Attorney General include claims that are the property of debtors' estates, this action was properly removed on grounds of federal bankruptcy jurisdiction.

## II.  THE COURT NEED NOT DECIDE THE REMAND MOTION NOW

There is no impediment to denying Plaintiff's remand motion for the reasons demonstrated above.  Nevertheless, the Court need not decide the jurisdictional issues now.  If the MDL Panel declines to create a multidistrict proceeding involving Countrywide's mortgage lending practices, or if it declines to associate this case with any MDL proceeding it creates, the Court can address the Plaintiff's remand motion thereafter.  If an MDL proceeding is created and the cases are transferred to any district other than this Court, then this Court will not have to rule on the remand issues at all.  Indeed, the "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the JPMDL has transferred the case to the MDL panel." *Jackson v. Johnson & Johnson, Inc.,* No. 01-2113 DA, 2001 U.S. Dist. LEXIS 22329, at *17 (W.D. Tenn. Apr. 3, 2001).  *See also Bd. of Trs. of Teachers' Ret. Sys. of Ill. v. WorldCom, Inc.,* 244 F. Supp. 2d 900, 902, 905 (N.D. Ill. 2002) ("the better reasoned view is that

---

bankruptcy court's arising in jurisdiction); *In re Hardwicke Cos.,* 64 B.R. 113, 116–17 (Bankr. S.D.N.Y. 1986) (same).

a court may stay proceedings even where subject matter jurisdiction is uncertain"; granting stay pending transfer to an MDL court notwithstanding pendency of remand motion); *Med. Soc'y of the State of New York v. Conn. Gen. Corp.*, 187 F. Supp. 2d 89, 92 (S.D.N.Y. 2001) (granting stay pending transfer to an MDL court notwithstanding pendency of remand motion); *Hardin v. Merck & Co.*, No. C 07-0070 SBA, 2007 WL 1056790, at *2 (N.D. Cal. Apr. 5, 2007) ("If a jurisdictional issue of a motion to remand is similar or identical to those in cases transferred or likely to be transferred to the MDL transferee court, the court should stay the action."); *Devers v. Merck & Co.*, No. CIV. S-06-617 LKK/PAN, 2006 WL 1377086, at *1 (E.D. Cal. May 18, 2006) ("In cases involving similar jurisdictional questions, deference to the MDL proceeding is often appropriate when 'the motion raises issues likely to arise in other actions pending in [the consolidated action].'") (citations omitted).

This Court's decision in *Tench v. Jackson National Life Insurance Co.*, No. 99-C-5182, 1999 WL 1044923, at *1 (N.D. Ill. Nov. 12, 1999) (Bucklo, J.) is directly on point. There, plaintiff had moved to remand her case alleging violations of ICFA based on "vanishing premium" life insurance policies. The defendant moved to stay the case pending the MDL Panel's decision. Much as in this case, the MDL Panel's hearing was scheduled for one week after the court's decision on the motion to stay. *Id.* at *1. (Here, the predicted remand and stay decision date is September 22, 2008, just *three* days before the MDL Panel's hearing. *See* Docket No. 23.) In granting the motion to stay and deferring decision on the remand motion, this Court noted that "[t]he MDL Panel is likely to transfer the case at bar, since it involves a nearly identical set of facts and similar legal theories as the cases previously consolidated" before the MDL transferee judge. *Tench*, 1999 WL 1044923, at *1. This Court emphasized that "[t]he MDL Panel clearly has the authority to transfer this case despite Ms. Tench's jurisdictional

objection." *Id.* (*citing In re Ivy*, 901 F.2d 7, 8-10 (2d Cir. 1990) ("Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course.").  This Court also recognized the value of a single transferee judge deciding similar jurisdictional issues: "This issue may arise again in other actions against Jackson National, so resolution by Judge McKeague in a single forum will ensure consistency and avoid duplicative efforts."  *Tench*, 1999 WL 1044923, at *2.  Similarly, here, defendants removed the three state-court actions that are included in its MDL petition on the same grounds, and any transferee judge will be able to deal with the jurisdictional issues on a uniform basis.  Thus, while there are ample grounds to deny Plaintiff's remand motion, this Court need not decide the motion now.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's remand motion.

Respectfully submitted,

Dated:  September 4, 2008

/s/ Andrew J. Schaefer_____
Tyrone C. Fahner
Andrew J. Schaefer
David K. Cole, III
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600 (telephone)
(312) 701-7711 (facsimile)

Attorneys for Defendants Countrywide
Financial Corporation, Countrywide Home
Loans, Inc., Full Spectrum Lending,
Countrywide Home Loans Servicing, LP,
and Angelo Mozilo

OF COUNSEL

John H. Beisner
Brian D. Boyle
Matthew M. Shors
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C.  20006-4001
(202) 383-5300 (telephone)
(202) 383-5414 (facsimile)

# EXHIBIT A

| | |
|---|---|
| HHD-CV-08-4039094-S | : SUPERIOR COURT |
| | : |
| STATE OF CONNECTICUT and HOWARD F. PITKIN | : JUDICIAL DISTRICT OF HARTFORD |
| | : |
| | : AT HARTFORD |
| VS. | : |
| | : |
| | : |
| COUNTRYWIDE FINANCIAL CORPORATION, | : |
| COUNTRYWIDE HOME LOANS, INC., and | : |
| COUNTRYWIDE HOME LOANS SERVICING LP | : AUGUST 27, 2008 |

## NOTICE OF FILING NOTICE OF REMOVAL
### TO THE JUDGES OF THE SUPERIOR COURT FOR THE STATE OF CONNECTICUT AND TO ALL PARTIES TO THE ACTION HEREIN

PLEASE TAKE NOTICE that on August 27, 2008, defendants Countrywide Financial Corporation, Countrywide Home Loans, Inc., and Countrywide Home Loans Servicing LP filed a Notice of Removal of this action to the United States District Court for the District of Connecticut pursuant to the provisions of 28 U.S.C. §§ 1441, 1442, 1446 and 1452. A true and correct copy of said Notice of Removal is attached hereto.

You are further advised that this Notice of Filing of Notice of Removal is served and filed pursuant to 28 U.S.C. § 1446(d) and that no further process shall proceed unless and until this case is remanded.

DEFENDANTS, COUNTRYWIDE
FINANCIAL CORPORATION,
COUNTRYWIDE HOME LOANS, INC. and
COUNTRYWIDE HOME LOANS
SERVICING LP


By _____
       Daniel L. FitzMaurice
       Erick M. Sandler
For    Day Pitney LLP
       242 Trumbull Street
       Hartford, CT 06103-1212
       Telephone - (860) 275-0100
       Fax - (860) 275-0343

       Stanley A. Twardy, Jr.
       One Canterbury Green
       Stamford, CT  06901
       Telephone - (203) 977-7368
       Fax - (866) 458 1037

       Their Attorneys

## <u>CERTIFICATION</u>

THIS IS TO CERTIFY that on this date, a copy of the foregoing was hand delivered to all counsel and pro se parties of record as follows:

Philip Rosario
Mark Kohler
Brendan T. Flynn
Lorrie L. Adeyemi
Dinah Bee
Richard Porter
Assistant Attorneys General
Office of the Connecticut Attorney General
110 Sherman Street
Hartford, Connecticut 06105

Erick M. Sandler

-3-

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE OF CONNECTICUT and HOWARD F. PITKIN, COMMISSIONER OF BANKING OF THE STATE OF CONNECTICUT, | ) ) ) ) |
| Plaintiff, | ) CASE NO. ) ) . |
| v. | ) August 27, 2008 ) |
| COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., and COUNTRYWIDE HOME LOANS SERVICING LP, | ) ) ) ) ) |
| Defendants. | ) ) ) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1334, 1367, 1441, 1442, 1446, and 1452, Defendants Countrywide Financial Corporation, Countrywide Home Loans, Inc., and Countrywide Home Loans Servicing LP ("Defendants") hereby submit this notice of removal of this case, seeking removal from the Superior Court for the Judicial District of Hartford, Connecticut to the United States District Court for the District of Connecticut. In support of this Notice of Removal, Defendants aver as follows:

## BACKGROUND

1.     On July 28, 2008, Plaintiffs filed this action in the Superior Court for the Judicial District of Hartford, Connecticut. In accordance with 28 U.S.C. § 1446(a), a copy of the Summons and Complaint served on the Defendants is attached as Exhibit A.

2.     Defendant Countrywide Home Loans, Inc. was served on July 29, 2008. (*See* Exhibit B.) Based on the Return of Service filed with the Superior Court, Defendants are

informed and believe that Plaintiffs took steps to attempt to serve all three defendants on July 28, 2008. (*See* Exhibit C.) This removal notice is timely under 28 U.S.C. § 1446(b) because it is being filed no later than 30 days after the first possible effective date of service. All Defendants consent to and join in this notice of removal.

## BASES FOR REMOVAL JURISDICTION

3.    Substantial federal question. This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 and is one which may be removed to this Court by Defendants pursuant to 28 U.S.C. § 1441(b) in that Plaintiffs assert claims that will necessitate the adjudication of substantial, disputed questions of federal law.

4.    Federal officer removal. The claims asserted against Countrywide Home Loans Servicing LP in this action are removable pursuant to 28 U.S.C. § 1442 because Countrywide Home Loans Servicing LP is a person acting under one or more federal officers (including, for example, the Secretary of the Department of Housing and Urban Development and the Secretary of the Department of Veterans Affairs), there is a causal nexus between the Plaintiffs' claims and Countrywide Home Loans Servicing LP's alleged conduct, and Countrywide Home Loans Servicing LP raises colorable federal defenses. *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

5.    Bankruptcy. In the alternative, and only in the event that the Court finds that it does not have jurisdiction based on at least one of the other two grounds alleged in this notice (substantial federal question and federal officer removal), the claims asserted against the Defendants in this action are removable based on federal bankruptcy jurisdiction, pursuant to 28 U.S.C. §§ 157, 1331, 1334, 1367, 1441, and 1452, and Rule 9027 of the Federal Rules of Bankruptcy Procedure, because this is a civil action arising under the Bankruptcy Code or arising

in one or more cases under the Bankruptcy Code. *See* 28 U.S.C. § 1334(b). Pursuant to Rule 9027(a)(1) of the Federal Rules of Bankruptcy Procedure, Defendants hereby state that upon removal of the causes of action, the proceeding is core.

6.   Supplemental Jurisdiction. To the extent that any of Plaintiffs' claims have no independent basis for original federal jurisdiction, this Court has supplemental jurisdiction over such claims under 28 U.S.C. § 1367 because they are so related to claims within this Court's have original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## SUBSTANTIAL FEDERAL QUESTION

7.   This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims that will necessitate the adjudication of substantial, disputed questions of federal law.

8.   Federal question jurisdiction is available in actions involving only state-law claims where those claims necessarily involve the resolution of underlying disputed questions of federal law. *See, e.g., Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (affirming federal-question jurisdiction over state quiet-title action based on need to resolve predicate issue under federal Internal Revenue Code).

9.   Plaintiffs' complaint asserts claims that necessitate resolution of substantial, disputed questions of federal law, including but not limited to the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* A determination of whether Plaintiffs may recover for the conduct described in their complaint will necessarily turn on substantial, disputed questions of federal law. Hence, this Court has federal question jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331.

10.     Plaintiffs' complaint asserts claims relating to the mortgage origination and servicing practices of Countrywide Financial Corporation, Countrywide Home Loans, Inc., and/or Countrywide Home Loans Servicing LP (individually and collectively, "Countrywide"). Plaintiffs allege that Countrywide originated or serviced residential mortgage loans, including Pay Option Adjustable Rate Mortgages ("ARMs") and Hybrid ARMs, in an unfair or deceptive fashion by misrepresenting or concealing the terms, risks, or suitability of the loans such that consumers could not understand or afford the loans. (*See* Compl. (Ex. A) at 4-5.[1]) Plaintiffs assert that terms applicable to the loans were not adequately disclosed. (*See id.*) Plaintiffs also allege that Countrywide "demanded that consumers enter into loan modifications and/or repayment plans which were not sustainable, affordable, or suitable," and "made untrue or misleading representations to consumers regarding the amount of the payments, fees and costs consumers had to pay in order to reinstate their loans and/or enter into and fulfill the terms of repayment plans and loan modifications." (*Id.* at 11.)

11.     Plaintiffs' claims for relief purport to be brought under state law—the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq.* ("CUTPA"), and the Banking Laws of Connecticut, *Id.* § 36a-1 *et seq.* CUTPA, however, expressly does not apply to "[t]ransactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority . . . of the United States." *Id.* § 42-110c(a)(1). *See Automated Salvage Transp. v. Wheelabrater Envt'l Sys., Inc.*, 1996 Conn. Super. LEXIS 2634, at *14 (Conn. Super Ct. Oct. 8, 1996) (striking CUTPA claim against private party because § 42-110c "applies not according to the identity of the party but rather to the transaction itself").

---

[1] Because the Complaint contains paragraph numbering errors, citations herein to the Complaint refer to page numbers rather than paragraph numbers.

12.    In construing § 42-110c(a)(1), the Supreme Court of Connecticut has held that CUTPA does not apply to conduct "expressly authorized and pervasively regulated by" a state or federal agency. *See Connelly v Housing Auth. of New Haven*, 567 A.2d 1212, 1216 (Conn. 1990). In *Connelly*, the court held that CUTPA did not apply to the defendant, a local housing authority, because the conduct the plaintiff challenged was pervasively regulated by, among others, the U.S. Department of Housing and Urban Development ("HUD").

13.    In *Connelly*, the Connecticut Supreme Court made clear that § 42-110c limits the scope of CUTPA, and that where it applies, it defeats an element of the plaintiff's CUTPA claim—namely, that the conduct at issue is governed by CUTPA. The court described CUTPA as a residual statute that applies only to regulate conduct not pervasively regulated elsewhere. *See* 567 A.2d at 1217-18. Thus, CUTPA only applies to transactions that are not otherwise heavily regulated, and substantial federal regulation therefore defeats an element of a CUTPA claim, namely, that the conduct is within the statute.

14.    Indeed, courts applying Illinois's materially identical exclusion have held that, when the conduct at issue is governed by a TILA, a plaintiff's right to relief under state unfair competition law necessarily depends on the application or construction of federal law. *See Jackson v. South Holland Dodge, Inc.*, 755 N.E.2d 462, 470 (Ill. 2001) (affirming dismissal of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") complaint because defendant complied with TILA); *Lanier v. Assocs. Fin. Inc.*, 499 N.E.2d 440, 445 (Ill. 1986) (affirmed dismissal of plaintiff's ICFA claim because the complaint failed to state a claim under TILA).

15.    Thus, a CUTPA claim challenging conduct governed by TILA necessarily depends on the application or construction of federal law. In order for Plaintiffs to state a claim

under CUTPA, the conduct they challenge must fall within its reach, and that conduct must therefore not be regulated under TILA. And in determining whether the conduct plaintiff challenges falls within TILA, the Court must necessarily resolve issues concerning TILA's scope that arise entirely under federal law. Plaintiffs' state-law claims, therefore, necessarily require a determination of federal law. *Grable*, 545 U.S. at 315.

16.    As in *Connelly*, Plaintiffs' claims here are phrased in terms of state law but implicate and require resolution of substantial, disputed questions of federal law. In particular, for Plaintiffs to prove an entitlement to relief on the claim that Countrywide inadequately disclosed the terms of the loans alleged in the complaint, Plaintiffs will have to prove that Countrywide violated TILA, a federal statute. *Id.* "The declared purpose of [TILA] is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'" *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)). "Accordingly, [TILA] requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Id.* (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638). Among the matters governed by TILA that are of particular relevance to this case are the disclosure of the terms under which interests rates adjust and of the possibility of negative amortization, and credit advertising generally. (*See* Compl. at 4-5 ("Defendants routinely represented to consumers that the particular loan products being offered were suitable, were 'best' for the consumers, that consumers were making the right decision to enter into loans with the Defendants, and that the consumers could refinance at a later date and on terms more favorable

to the consumers."); *id.* at 5 ("Defendants made loans to consumers on terms that differed materially from those represented to consumers prior to closing, which were not suitable and affordable, were not appropriate for consumers' specific situations, and were not made based on consumers' ability to pay.").)

17.     Because Plaintiffs' state-law claims necessarily involve the resolution of underlying substantial, disputed questions of federal law, including whether Defendants' disclosures were adequate under TILA and implementing regulations, federal question jurisdiction is appropriate.

18.     There is a significant federal interest in the adjudication of these claims in a federal forum. *Grable*, 545 U.S. at 314. Furthermore, the exercise of federal question jurisdiction here will not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Id.* To the contrary, TILA authorizes a federal private right of action in certain circumstances. *See* 15 U.S.C. §§ 1635, 1640. This demonstrates that there is a significant federal interest in adjudicating this type of dispute in federal court. *Grable*, 545 U.S. at 317-18 (existence of a federal private right of action weighs in favor of federal question jurisdiction, while absence weighs against) (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804 (1986)).

19.     Thus, there is a significant interest in having these federal issues adjudicated in a federal forum, and removal of this action will not disrupt any balance between federal and state judicial responsibilities over related disputes.

## FEDERAL OFFICER REMOVAL

20.     The claims asserted against Countrywide Home Loans Servicing LP in this action are removable pursuant to 28 U.S.C. § 1442 because Countrywide Home Loans

Servicing LP is a person acting under one or more federal officers, there is a causal nexus between the Plaintiffs' claims and Countrywide Home Loans Servicing LP's alleged conduct, and Countrywide Home Loans Servicing LP raises colorable federal defenses. *See Acker*, 527 U.S. at 431.

21.     *First*, Countrywide Home Loans Servicing LP is a person acting under one or more federal officers, including but not limited to the Secretary of the Department of Housing and Urban Development ("HUD") and the Secretary of the Department of Veterans Affairs ("VA"), for purposes of 28 U.S.C. § 1442(a)(1), in connection with the servicing of mortgage loans insured by the federal government.

22.     Through the Federal Housing Administration ("FHA") program, HUD guarantees and insures the performance of thousands of loans that Countrywide Home Loans Servicing LP services.  HUD regulations provide that in order to be approved to participate in insurance programs authorized under the National Housing Act, including the FHA program, and to maintain approval, "[a] lender shall service or arrange for servicing of the loan in accordance with the requirements of part 201 of this chapter.  A mortgagee shall service or arrange for servicing of the mortgage in accordance with the servicing responsibilities contained in subpart C of part 203 and in part 207 of this chapter, with all other applicable regulations contained in this title, and with such additional conditions and requirements as the Secretary may impose." 24 C.F.R. § 202.5(e).

23.     The regulations include detailed loss mitigation procedures that emphasize, among other things, the requirement that mortgagees minimize the risk of financial loss to HUD in connection with the mortgagees' servicing of FHA-insured loans: "Mortgagees must consider the comparative effects of their elective servicing actions, and *must take those*

*appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department.* Such actions include, but are not limited to, deeds in lieu of foreclosure under § 203.357, pre-foreclosure sales under § 203.370, partial claims under § 203.414, assumptions under § 203.512, special forbearance under §§ 203.471 and 203.614, and recasting of mortgages under § 203.616." 24 C.F.R. § 203.501 (emphasis added).

24.     For example, these regulations permit a mortgagee to modify a mortgage for the purposes of changing the amortization provisions, but only within specified constraints, and with notice to HUD: "The mortgagee may modify a mortgage for the purpose of changing the amortization provisions by recasting the total unpaid amount due for a term not exceeding 360 months. The mortgagee must notify HUD of such modification in a format prescribed by HUD within 30 days of the execution of the modification agreement." 24 C.F.R. § 203.616.

25.     As another example, a mortgagee's power to grant special forbearance relief for FHA-insured mortgage loans, and the nature of the relief, is limited to circumstances defined by HUD: "If the mortgagee finds that a default is due to circumstances beyond the mortgagor's control, as defined by HUD, the mortgagee may grant special forbearance relief to the mortgagor in accordance with the conditions prescribed by HUD." 24 C.F.R. § 203.614.

26.     HUD has issued handbooks providing further, detailed requirements relating to mortgage modifications and forbearance for FHA-insured loans, such as HUD Handbook 4330.1, REV-5 (Administration of Insured Home Mortgages). (*See* http://www.hud.gov/offices/adm/hudclips/handbooks/hsgh/4330.1/index.cfm.) The Handbook is frequently supplemented with bulletins and explanatory letters, including Mortgagee Letters (collectively, the "HUD Handbook").

- 9 -

27.    Among other provisions, the HUD Handbook dictates procedures the servicer "must" provide for the servicing of defaulted loans, including requirements concerning delinquency counseling, foreclosure avoidance, and pre-foreclosure review. (*See generally* HUD Handbook, Chapter 1-9, 7-7, 7-11, and 7-12.)

28.    The HUD Handbook has detailed requirements concerning workouts (modifications made to allow the borrower to bring the mortgage current) and forbearances. (*See generally* HUD Handbook, Chapter 8.) The HUD Handbook prescribes the available forbearance agreements (informal, formal, and special), and defines those agreements and procedures for which specific HUD approval is—or is not—required. (*See* HUD Handbook, §§ 8-3 and 8-4.) HUD also has delegated certain authority to servicers, such as Countrywide Home Loans Servicing LP, for the recasting and modification of loans in some circumstances. (*See* HUD Handbook, Chapters 3, 8-6.)

29.    The performance of FHA loans is guaranteed by the Government National Mortgage Association (commonly referred to as Ginnie Mae or GNMA), which is part of HUD. Ginnie Mae also imposes requirements on the servicing of loans that are in default and/or in foreclosure. (*See* Ginnie Mae Handbook, Chapter 18.) Those requirements are dictated to Countrywide as issuer and servicer.

30.    A mortgagee's failure to employ FHA-directed and GNMA-directed servicing requirements and loss-mitigation measures, as set forth in regulations, handbooks, and other directives, can result in a mortgagee losing its power to service FHA-insured loans or being subject to other restrictions or penalties, or may result in a loss or curtailment of default insurance coverage with respect to particular loans.

31.     In addition to the above-referenced rules relating to the ability to modify mortgage loans and offer forbearance agreements, there are detailed regulations relating to other servicing obligations for FHA-insured and GNMA-guaranteed loans. *See* 24 C.F.R. §§ 203.500-203.681; *see also* HUD Handbook, Chapters 1, 2, 4, 9. The regulations provide that "[t]he servicer must fully discharge the servicing responsibilities of mortgagees as outlined in this part. The mortgagee shall remain fully responsible to the Secretary [of HUD] for proper servicing, and the actions of its servicer shall be considered the actions of the mortgagee. The servicer also shall be fully responsible to the Secretary for its actions as a servicer." 24 C.F.R. § 203.502(a). The regulations and the Handbooks impose detailed requirements on mortgagees and their servicers in connection with servicing such loans. For example:

- **Escrow accounts**. These regulations require that "[m]ortgagees must establish controls to insure that bills payable from the escrow fund or the information needed to pay such bills is obtained on a timely basis" (24 C.F.R. § 203.550(a)); that "[p]enalties for late payments for items payable from the escrow account must not be charged to the mortgagor unless it can be shown that the penalty was the direct result of the mortgagor's error or omission" (*id.*); that "[t]he mortgagee shall not institute foreclosure when the only default of the mortgagor occupant is a present inability to pay a substantial escrow shortage, resulting from an adjustment pursuant to this section, in a lump sum." 24 C.F.R. § 203.550(d).

- **Fees and charges after endorsement**. These regulations provide detailed requirements as to fees and charges, and provide that the "mortgagee may collect reasonable and customary fees and charges from the mortgagor after insurance endorsement *only* as provided" in the regulations. 24 C.F.R. § 203.552(a) (emphasis added). The regulated

fees and charges include late charges (as set forth in other regulations), charges for processing uncollectible checks, and attorney's and trustee's fees and expenses in connection with foreclosure. *Id.* The regulations also provide that the "reasonable and customary charges" shall *not* include such charges as "[c]harges for servicing activities of the mortgagee or servicer." *Id.* In addition, the mortgages and deeds of trust executed by mortgagors whose loans are insured by HUD often provide that fees and charges are permitted as set forth by HUD.

- **Loss mitigation performance**. The regulations require that "[b]efore four full monthly installments due on the mortgage have become unpaid, the mortgagee shall evaluate on a monthly basis all the loss mitigation techniques provided at § 203.501 to determine which is appropriate. Based on such evaluations, the mortgagee shall take appropriate loss mitigation action." 24 C.F.R. § 203.605(a).

- **Pre-foreclosure review**. The regulations require that "[b]efore initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met." 24 C.F.R. § 203.606(a).

32. The HUD requirements cited above are applicable to Countrywide Home Loans Servicing LP's servicing of FHA-insured and GNMA-guaranteed loans, as provided therein. Under these requirements, Countrywide Home Loans Servicing LP is expressly charged with specific servicing obligations for such loans, and is subject to specific constraints directed by the federal government with regard to loan modifications and forbearance. In addition, Countrywide Home Loans Servicing LP has been specifically approved by HUD as a "non-supervised mortgagee," and it and its affiliates are approved by GNMA as Issuers, which entitles

Countrywide Home Loans Servicing LP to, among other things, service FHA-insured and GNMA-guaranteed loans.

33.    As part of the FHA program, HUD reviews the performance of Countrywide Home Loans Servicing LP and its compliance with the requirements, and imposes penalties with respect to particular loans or that affect the company's overall status when loans are not serviced pursuant to the applicable regulations, Handbooks, and other requirements.

34.    As a result of the above-referenced circumstances, the Secretary of HUD has delegated legal authority to Countrywide Home Loans Servicing LP in connection with the servicing of FHA-insured and GNMA-guaranteed mortgage loans and is directing the conduct and acts of Countrywide Home Loans Servicing LP, such that Countrywide Home Loans Servicing LP is acting under the Secretary of HUD for purposes of 28 U.S.C. § 1442(a)(1). Confirming that Countrywide Home Loans Servicing LP is acting under a federal officer, the servicing of federally-insured and guaranteed mortgage loans is something that, absent these regulations and approvals, a federal officer or agency (such as HUD or its Secretary) would have to do itself.  Hence, Countrywide Home Loans Servicing LP is directly assisting the federal government in providing a service that it would otherwise provide on its own. *See, e.g., Watson v. Philip Morris Cos.*, 127 S. Ct. 2301, 2308 (2007) (observing that federal officer removal would be appropriate where the removing party is "helping the Government to produce an item that it needs" or "performed a job that . . . the Government itself would [otherwise] have had to perform.").

35.    Similarly, Countrywide Home Loans Servicing LP services loans guaranteed by the VA pursuant to instructions and directions provided by the VA by regulation and handbook. 38 C.F.R. §§ 36.4300 et seq.; VA Handbook H26-94-1. These requirements

include detailed direction with respect to default servicing, alternatives to foreclosures (such as forbearances and modifications), and foreclosure. *Id.* HUD reviews servicing performance with respect to VA loans as it does with FHA loans. VA-guaranteed loans are also guaranteed by GNMA, and subject to the requirements sets forth above with respect to FHA loans. As such, the Secretary of the VA has delegated legal authority to Countrywide Home Loans Servicing LP in connection with the servicing of VA-guaranteed mortgage loans and is directing the conduct and acts of Countrywide Home Loans Servicing LP, such that Countrywide Home Loans Servicing LP is acting under the Secretary of the VA for purposes of 28 U.S.C. § 1442(a)(1). Confirming that Countrywide Home Loans Servicing LP is acting under a federal officer, the servicing of federally-insured mortgage loans is something that, absent these regulations and approvals, a federal agency or officer (such as the VA or its Secretary) would have to do itself. Hence, Countrywide Home Loans Servicing LP is directly assisting the federal government in providing a service that it would otherwise provide on its own. *See, e.g., Watson*, 127 S. Ct. at 2308.

36.    *Second*, there is a causal nexus between the claims asserted against Countrywide Home Loans Servicing LP and the conduct performed by Countrywide Home Loans Servicing LP in connection with its servicing of mortgage loans insured by the federal government, including FHA-insured and guaranteed loans and VA-guaranteed loans.

37.    The Complaint's allegations against Countrywide Home Loans Servicing LP fall squarely within the duties delegated by the Secretaries of HUD and the VA to Countrywide Home Loans Servicing LP pursuant to the regulations and approvals referenced above. The Complaint alleges that Countrywide Home Loans Servicing LP "demanded that consumers enter into loan modifications and/or repayment plans which were not sustainable,

affordable, or suitable." (Compl. at 11.) In addition, the Complaint alleges that Countrywide

Home Loans Servicing LP "made untrue or misleading representations to consumers regarding

the amount of the payments, fees and costs consumers had to pay in order to reinstate their loans

and/or enter into and fulfill the terms of repayment plans and loan modifications." (*Id.*)

Plaintiffs also allege that Countrywide Home Loans Servicing LP charged consumers "excessive

and inaccurate legal fees over and above those legitimately incurred." (*Id.* at 10.)

   38. The Complaint devotes two counts to Countrywide Home Loans Servicing

LP's mortgage servicing practices: Count Four is devoted to alleging that Countrywide Home

Loans Servicing (and the other Defendants) violated Connecticut law in servicing mortgages;

and Count Five alleges that those violations were "willful." (*See* Compl. at 9-13.) The

Complaint does not attempt to distinguish between federally insured loans and non-federally

insured loans; it challenges Countrywide Home Loans Servicing LP's practices in all instances.

   39. The above-referenced allegations directly challenge Countrywide Home

Loans Servicing LP's performance of its appointed duties in servicing federally insured

mortgage loans, including under the regulations, handbooks, and approvals of HUD, the VA, and

GNMA cited above.

   40. Accordingly, there is a causal nexus between Plaintiffs' claims and

Countrywide Home Loans Servicing LP's conduct in carrying out its duties in connection with

servicing mortgage loans insured by the federal government. *See, e.g., Isaacson v. Dow Chem.

Co.*, 517 F.3d 129, 137-38 (2d Cir. 2008) ("[t]o show causation, Defendants must only establish

that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were

performing their official duties.") (emphasis in original).

41.    *Finally*, federal officer removal is appropriate because Countrywide Home Loans Servicing LP raises colorable federal defenses. Countrywide Home Loans Servicing LP acted in compliance with federal law—including the HUD, VA, and GNMA regulations and requirements and the specific HUD, VA, and GNMA approvals of its servicing responsibilities—in its servicing of federally-insured mortgage loans. Hence, Countrywide Home Loans Servicing LP raises colorable federal defenses that arise out of its duties pursuant to its relationship with the government in servicing federally-insured mortgage loans. *See, e.g., Isaacson*, 517 F.3d at 139 (compliance with federal law can provide a colorable federal defense for purposes of federal officer removal); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1428 (11th Cir. 1996) (colorable federal defense where "[a]t least part of Smith's defense is that he acted within the scope of his federal duties, that what he did was required of him by federal law, and that he did all federal law required.").

42.    In light of the foregoing, this action is removable pursuant to 28 U.S.C. § 1442.

## BANKRUPTCY REMOVAL

43.    In the alternative, and only in the event that the Court finds that it does not have jurisdiction based on at least one of the other two grounds alleged in this notice (substantial federal question and federal officer removal), the claims asserted against the Defendants in this action are removable based on federal bankruptcy jurisdiction, pursuant to 28 U.S.C. §§ 157, 1331, 1334, 1441, and 1452, and Rule 9027 of the Federal Rules of Bankruptcy Procedure, because this is a civil action arising under the Bankruptcy Code or arising in one or more cases under the Bankruptcy Code. *See* 28 U.S.C. § 1334(b). In that event, Defendants will file an appropriate motion to stay any referral to bankruptcy court and to remain in district court.

44. This action is brought on behalf of Connecticut residents who are borrowers of non-prime mortgage loans. Many of those borrowers have filed bankruptcy proceedings in United States bankruptcy courts within the last four years. Since July 2004, one or more Defendants have serviced 46,801 non-prime mortgage loans with property addresses in Connecticut. Of those 46,801 loans, 800 involved borrowers ("debtors") who have sought relief in United States bankruptcy courts, including in this District. Defendants will, at the appropriate time, be prepared to attempt to identify the names and case numbers of some or all of the debtors who sought relief in bankruptcy court in this District.

45. Some or all of the claims asserted in the instant case are pre-petition assets that belong to the estates of bankrupt borrowers rather than to the bankrupt borrowers individually. These claims are property of the bankruptcy estates under 11 U.S.C. §§ 541 and 1306(a). Even though some of the bankruptcy cases have been closed, or the debtors have been discharged, the claims remain the property of the bankruptcy estates, and not of the individual debtors, if the debtors failed to schedule those claims under 11 U.S.C. § 521(1) and/or those claims were not exempt or were not administered or abandoned during the bankruptcy case. 11 U.S.C. § 554(d). To the extent a debtor in a pending or previous bankruptcy case has raised claims similar to those raised in this case, the claims are part of the estate or are already at issue in bankruptcy cases. This Court has original and exclusive jurisdiction over claims and over property of the various bankruptcy cases filed in this district, including the claims asserted in the instant (state court) case filed by the Connecticut Attorney General.

46. Upon removal, this proceeding is a core matter in numerous bankruptcy cases because, for example, it is a proceeding that affects the liquidation of assets of the estate. *See* 28 U.S.C. § 157(b)(2)(O).

47.    Although filed by the Connecticut Attorney General, this action is not properly understood as an exercise of regulatory or police power under 28 U.S.C. § 1452(a) because it seeks to protect a pecuniary interest in property of the debtors or their bankruptcy estates. (*See, e.g.*, Compl. at 14 (seeking an order "rescinding, reforming, or modifying all mortgage loans between Defendants and all Connecticut consumers who have been affected by the violations of General Statutes § 42-110b(a)".) Accordingly, bankruptcy removal is proper here.

## SUPPLEMENTAL JURISDICTION

48.    To the extent that any of Plaintiffs' lack an independent basis for original federal jurisdiction, this Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367 because they are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## PROPRIETY OF REMOVAL

49.    For the foregoing reasons, this Court has jurisdiction over this matter based on federal question jurisdiction under 28 U.S.C. § 1331, federal officer removal under 28 U.S.C. § 1442, bankruptcy jurisdiction under 28 U.S.C. § 1334, and supplemental jurisdiction under § 1367. Hence, this action may be removed to this Court pursuant to 28 U.S.C. §§ 1441(a) and (b), 1442, and 1452.

50.    The United States District Court for the District of Connecticut is the federal judicial district encompassing the Superior Court for the Judicial District of Hartford, Connecticut, where this suit was originally filed. Venue therefore is appropriate in this district under 28 U.S.C. § 1441(a).

51.    Accordingly, this action may be removed from the Superior Court for the Judicial District of Hartford, Connecticut, and brought before the United States District Court for the District of Connecticut, pursuant to 28 U.S.C. §§ 1331, 1334, 1367, 1441(a) and (b), 1442, and 1452.

52.    Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly file a copy of this Notice of Removal with the clerk of the Superior Court for the Judicial District of Hartford, Connecticut, and will serve a copy of the same upon counsel for the Plaintiffs.

Respectfully submitted,

Dated: August 27, 2008

Daniel L. Fitzmaurice (ct05331)
dlfitzmaurice@daypitney.com
Erick M. Sandler (ct25029)
emsandler@daypitney.com
DAY PITNEY LLP
242 Trumbull Street
Hartford, Connecticut 06103-1212
(860) 275-0100 (telephone)
(860) 275-0343 (facsimile)

Stanley A. Twardy, Jr. (ct05096)
satwardy@daypitney.com
One Canterbury Green
Stamford, Connecticut 06901-2047
(203) 997-7368 (telephone)
(203) 997-7301 (facsimile)


*Attorneys for Defendants Countrywide
Financial Corporation, Countrywide Home
Loans, Inc., and Countrywide Home Loans
Servicing LP*

OF COUNSEL

John H. Beisner
Brian D. Boyle
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006-4001
(202) 383-5300 (telephone)
(202) 383-5414 (facsimile)

## CERTIFICATION

THIS IS TO CERTIFY that on this date a copy of the foregoing was served on the following counsel of record by hand delivery:

Phillip Rosario
Mark Kohler
Brendan T. Flynn
Lorrie L. Adeyemi
Dinah Bee
Richard Porter
Office of the Connecticut Attorney General
110 Sherman Street
Hartford, CT  06105

_____
Erick M. Sandler

# EXHIBIT A

**SUMMONS - CIVIL**
(Except Family Actions)
JD-CV-1 Rev. 1-2000
C.G.S. § 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs 3-1 thru 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

| "X" ONE OF THE FOLLOWING: |
| --- |
| Amount, legal interest or property in demand, exclusive of interest and costs is: |
| ☐ less than $2,500 |
| ☐ $2,500 through $14,999.99 |
| ☒ $15,000 or more |
| ("X" if applicable) |
| ☒ Claiming other relief in addition to or in lieu of money or damages. |

**INSTRUCTIONS**
1. Type or print legibly; sign original summons and conform all copies of the summons.
2. Prepare or photocopy conformed summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
5. The party recognized to pay costs must appear personally before the authority taking the recognizance.
6. Do not use this form for actions in which an attachment, garnishment or replevy is being sought. See Practice Book Section 8-1 for other exceptions.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| RETURN DATE (Mo., day, yr.) (Must be a Tuesday) August 26, 2008 |
| --- |

| ☒ JUDICIAL DISTRICT | AT (Town in which writ is returnable) (C.G.S. 51-346, 51-349) | CASE TYPE (See JD-CV-1c) |
| ☐ HOUSING SESSION   ☐ G.A. NO. | Hartford | Major **M**   Minor **90** |

ADDRESS OF COURT CLERK WHERE WRIT AND OTHER PAPERS SHALL BE FILED (No., street, town and zip code) (C.G.S. 51-346, 51-350)
95 Washington Street, Hartford, CT 06106

TELEPHONE NO. (with area code)
860-548-2700

| PARTIES | NAME AND ADDRESS OF EACH PARTY (No., street, town and zip code)     NOTE: Individuals' Names: Last, First, Middle Initial | | PTY NO. |
| --- | --- | --- | --- |
| | | ☐ Form JD-CV-2 attached | |
| FIRST NAMED PLAINTIFF | State of Connecticut Office of the Attorney General, 110 Sherman Street, Hartford, CT 06106 | | 01 |
| Additional Plaintiff | Howard F. Pitkin, Commissioner of Banking of the State of Connecticut Office of the Attorney General, 110 Sherman Street, Hartford, CT 06106 | | 02 |
| FIRST NAMED DEFENDANT | Countrywide Financial Corporation Bank of America Corporate Center, 100 N. Tryon Street, Charlotte, North Carolina 28255 | | 50 |
| Additional Defendant | Countrywide Home Loans, Inc., c/o The Prentice-Hall Corporation System, Inc., Its Registered Agent for Service 50 Weston Street, Hartford, CT 06120-1537 | | 51 |
| Additional Defendant | Countrywide Home Loans Servicing LP 4500 Park Granada, CH-11, Calabasas, CA 91302 | | 52 |
| Additional Defendant | | | 53 |

**NOTICE TO EACH DEFENDANT**

1. YOU ARE BEING SUED.
2. This paper is a Summons in a lawsuit.
3. The Complaint attached to these papers states the claims that each Plaintiff is making against you in this lawsuit.
4. To respond to this Summons, or to be informed of further proceedings, you or your attorney must file a form called an "Appearance" with the Clerk of the above-named Court at the above Court address on or before the second day after the above Return Date.
5. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default.
6. The "Appearance" form may be obtained at the above Court address.
7. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately take the Summons and Complaint to your insurance representative.
8. If you have questions about the Summons and Complaint, you should consult an attorney promptly. **The Clerk of Court is not permitted to give advice on legal questions.**

| DATE July 28, 2008 | SIGNED (Sign and "X" proper box) | ☒ Comm. of Superior Court ☐ Assistant Clerk | TYPE IN NAME OF PERSON SIGNING AT LEFT Phillip Rosario |
| --- | --- | --- | --- |

FOR THE PLAINTIFF(S) PLEASE ENTER THE APPEARANCE OF:

| NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE (No., street, town and zip code) AAG Phillip Rosario, 110 Sherman Street, Hartford, CT 06105 | TELEPHONE NUMBER 860-808-5400 | JURIS NO. (if atty. or law firm) 085059 |
| --- | --- | --- |

| NAME AND ADDRESS OF PERSON RECOGNIZED TO PROSECUTE IN THE AMOUNT OF $250 (No., street, town and zip code) N/A | SIGNATURE OF PLAINTIFF IF PRO SE |
| --- | --- |

| # PLFS. 2 | # DEFS. 3 | # CNTS. 5 | SIGNED (Official taking recognizance; "X" proper box) | ☐ Comm. of Superior Court ☐ Assistant Clerk | For Court Use Only FILE DATE |
| --- | --- | --- | --- | --- | --- |

IF THIS SUMMONS IS SIGNED BY A CLERK:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service thereof.

ATTEST A TRUE COPY

BRIAN FRANCIS ZITO
CONNECTICUT STATE MARSHAL
CONSTABLE-INDIFFERENT PERSON

| I hereby certify I have read and understand the above: | SIGNED (Pro Se Plaintiff) | DATE SIGNED | DOCKET NO. |
| --- | --- | --- | --- |

ORIGINAL

RETURN DATE: AUGUST 26, 2008

| | | |
|---|---|---|
| STATE OF CONNECTICUT and | : | SUPERIOR COURT |
| HOWARD F. PITKIN, COMMISSIONER | : | |
| OF BANKING OF THE STATE OF | : | |
| CONNECTICUT | : | |
|     *Plaintiff* | : | |
| | : | JUDICIAL DISTRICT OF |
|     v. | : | HARTFORD |
| | : | |
| COUNTRYWIDE FINANCIAL | : | |
| CORPORATION, COUNTRYWIDE | : | |
| HOME LOANS, INC., and | : | |
| COUNTRYWIDE HOME LOANS | : | |
| SERVICING LP | : | |
|     *Defendants* | : | JULY 28, 2008 |

## COMPLAINT

### COUNT ONE (Violation of the Connecticut Unfair Trade Practices Act)

1.      This is an action under the Connecticut Unfair Trade Practices Act ("CUTPA"),

Chapter 735 of the Connecticut General Statutes, for injunctive relief against the defendants for

alleged violations of Conn. Gen. Stat. § 42-110b(a), which prohibits unfair or deceptive acts or

practices, for restitution to consumers, for the defendants' alleged violations of law, for civil

penalties, and for other relief.

## THE PARTIES

2.    The plaintiff is the State of Connecticut, represented by Richard Blumenthal, Attorney General, acting at the request of Jerry Farrell, Jr., Commissioner of Consumer Protection, pursuant to the authority of Chapter 735a of the General Statutes.

3.    The Defendant, Countrywide Financial Corporation, a Delaware corporation with a principal place of business in North Carolina, is a wholly owned subsidiary of Bank of America Corporation and is the successor corporation to another entity also named Countrywide Financial Corporation ("Old Countrywide"). Effective July 1, 2008 Old Countrywide merged with and into Red Oak Merger Corporation, the surviving corporation and a wholly owned subsidiary of Bank of America Corporation. On or about the effective date of the merger, Red Oak Merger Corporation changed its name to Countrywide Financial Corporation. All references to Countrywide Financial Corporation in this complaint shall mean and refer to Countrywide Financial Corporation and its predecessor corporation, Old Countrywide.

4.    At all times relevant hereto, Countrywide Financial Corporation was a thrift holding company whose subsidiaries originated, purchased, securitized, sold and serviced residential mortgage loans, and provided other services related to its mortgage lending and real estate finance business. It owned, operated, and controlled the policies and practices of the defendant Countrywide Home Loans, Inc., as its wholly owned subsidiary.

5.    At all times relevant hereto, the Defendant, Countrywide Home Loans, Inc., was a New York corporation with a certificate of authority to do business in Connecticut as a foreign

corporation. At all times relevant hereto, Countrywide Home Loans, Inc. was engaged in the business, trade or commerce of mortgage lending in Connecticut.

6.     At all times relevant hereto, Countrywide Financial Corporation conducted its mortgage lending business with consumers in Connecticut through the defendant Countrywide Home Loans, Inc.

7.     For the purposes of this Count, Countrywide Financial Corporation and Countrywide Home Loans, Inc.  are collectively referred to herein as the "Defendants."

### DEFENDANTS' COURSE OF CONDUCT

8.     The acts or practices described in this complaint occurred in trade or commerce in Connecticut.

9.     Whenever reference is made in this complaint to any act or practice of a Defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents or representatives of such Defendant did, or authorized, such act or practice, on behalf of such Defendant while actively engaged in the scope of their duties.

10.     Whenever reference is made in this complaint to any act, practice, or conduct of a Defendant, such allegation shall be deemed to mean the act of that Defendant acting individually or jointly, through an agreement to so act or through that Defendant's provision of assistance or encouragement in accomplishing an unfair act or practice, given either in breach of that Defendant's own duty or with knowledge that the other Defendants were wrongful.

3

11.    The Defendants made mortgage loans to consumers who wished to purchase residences and refinance existing residential mortgages. These loans included without limitation various types of adjustable rate mortgages ("ARMs"), some with either a fixed interest rate or a fixed interest only payment for an initial period, pay option ARMs, which gave the borrower the option of making interest-only payments of less than the full amount of interest due, and home equity lines of credit ("HELOCs").

12.    Countrywide Financial Corporation emphasized in public statements from 1999 through 2006 that mortgage banking was its core business.

13.    In its public statements, Countrywide Financial Corporation further emphasized its unwavering commitment to corporate ethics and ethical standards, and its demand that all its employees act lawfully and with integrity when working with its customers. Additionally, it pledged it would not " sacrifice sound business practices" to reach its market goals.

14.    In its public statements, Countrywide Financial Corporation expressly or impliedly represented that it made loans to consumers that were suitable and affordable, and made its lending decisions based upon a consumer's credit and ability to pay. Specifically it stated that it offered a wide range of products as "solutions to match a family's income level or credit profile," that its selection of loans was "built to suit specific needs of our customers," and that its experts "are ready to help you find the loan that's perfect for you!"

15.    On information and belief, prior to making the loans, the Defendants routinely represented to consumers that the particular loan products being offered were suitable, were the

"best" for the consumers, that consumers were making the right decision to enter into loans with the Defendants, and that the consumers could refinance at a later date and on terms more favorable to the consumers.

16.    On information and belief, contrary to their representations, Defendants made loans to consumers on terms that differed materially from those represented to consumers prior to closing, which were not suitable and affordable, were not appropriate for consumers' specific situations, and were not made based on consumers' ability to pay. By way of example, the Defendants' loan representative expressly misrepresented to a consumer that the consumer's proposed monthly payment would include a property tax escrow. In truth, the payment did not include such an escrow, a fact the Defendants revealed only at the loan closing, and as a result, the consumer's actual financial obligation associated with the loan was significantly greater than she had been lead to believe it would be. In other instances, the Defendants' agents improperly inflated consumers' incomes in order to qualify them for loans they otherwise would not have received, and pressured consumers into inappropriate payment-option ARMs. In yet another case, the Defendants' loan representative circumvented the Defendants' own purported rules and procedures by referring a consumer, whose fully documented application for a HELOC had been rejected due to insufficient income by the Defendants, to another of the Defendants' retail locations so that she could apply for, and ultimately receive, a HELOC; the consumer was then required to draw down the entire balance of the HELOC at time of closing despite her expectation that she would draw against the HELOC only as needed. Finally, the Defendants declined to

5

refinance consumers into more favorable loans, the Defendants' prior representations notwithstanding.

## VIOLATIONS OF CUTPA

17.    By engaging in the aforementioned representations and omissions, the Defendants made untrue or misleading representations to consumers regarding the material terms, suitability and affordability of Defendants' loans, and the material terms of Defendants' loans.

18.    The Defendants' misrepresentations, as described herein, were likely to mislead consumers acting reasonably under the circumstances.

19.    The Defendants' acts or practices, as described herein, were material to consumers' decisions as to whether to enter into contracts with the Defendants for mortgage loans.

20.    By engaging in the aforementioned acts and practices, the Defendants have violated the public policy of the State of Connecticut, including but not limited to the public policy against unconscionable lending practices and contracts, against making misrepresentations and nondisclosures, against violating the duties of good faith and fair dealing, and against high pressure credit practices, all as embodied in the common law and in the banking laws of Connecticut, namely Conn. Gen. Stat. § 36a-494 and Conn. Gen. Stat. § 36a-517.

21.    The Defendants' acts and practices, as described herein, are oppressive, unethical, immoral and unscrupulous.

6

22.   The Defendants' acts or practices, as described herein, caused substantial injury to consumers, in that consumers entered into mortgage loans for which they could not afford payment, and suffered, or risked suffering, the loss of their homes and/or foreclosure.

23.   The Defendants' acts or practices, as described herein, therefore constitute unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b(a).

## COUNT TWO (Willfulness)

1-23.   Paragraphs 1 through 23 of Count One are made paragraphs 1 through 23 of this Count Two as if fully set forth herein.

24. The Defendants have engaged in the acts or practices alleged herein when they knew, or should have known, that their conduct was unfair or deceptive in violation of Conn. Gen. Stat. §42-110b(a).

## COUNT THREE (Violations of the Banking Laws of Connecticut)

1.   This Count Three is brought under Chapters 664a and 668 and section 36a-50(b) of the Connecticut General Statutes, to secure injunctive relief against the Defendants for acts and practices by licensees which are prohibited under Conn. Gen. Stat. §§ 36a-494 and 36a-517, and to obtain relief as is necessary to redress injury to consumers resulting from the Defendants' violations of law, including but not limited to restitution to consumers who are the subject of such violations.

7

2.     The Plaintiff is the State of Connecticut, represented by Richard Blumenthal, Attorney General, acting on behalf of Howard F. Pitkin, Commissioner of Banking. Commissioner Pitkin has authorized the institution of this action pursuant to the authority of Chapter 664a of the General Statutes, and more particularly General Statutes § 36a-50(b), and Chapter 668 of the General Statutes governing non-depository financial institutions. Commissioner Pitkin authorized this action for the purpose of seeking appropriate relief for alleged violations of law.

3.     At all times relevant hereto, the Defendant, Countrywide Home Loans, Inc., was licensed to make mortgage loans in Connecticut by the Connecticut Department of Banking.

4-24.   Paragraphs 3 through 23 of Count One are hereby made paragraphs 4 through 24 of this Count Three, as if fully set forth herein.

25.     By engaging in the aforesaid acts and practices, the Defendants have also made untrue or misleading statements of material fact, omitted material facts necessary in order to make other statements of material fact, in light of the circumstances under which they were made, not misleading, and concealed, suppressed, intentionally omitted or otherwise intentionally failed to disclose material particulars of loan transactions.

26.     The Defendants have therefore violated Conn. Gen.  Stat. §§ 36a-494 and 36a-517.

8

## COUNT FOUR (Violation of the Connecticut Unfair Trade Practices Act)

1-5.    Paragraphs 1 through 5 of Count One are made paragraphs 1 through 5 of this Count Four as if fully set forth herein.

6.    The acts or practices described in this Count Four occurred in trade or commerce in Connecticut.

7.    At all times relevant hereto, the Defendant, Countrywide Home Loans Servicing LP ("Countrywide Servicing"), was a Texas limited partnership directly owned by two wholly-owned subsidiaries of the Defendant Countrywide Home Loans, Inc. At all times relevant hereto, Countrywide Servicing engaged in trade or commerce in the State of Connecticut by servicing mortgage loans originated by Countrywide Home Loans, Inc. and unrelated entities.

8.    For the purposes of this Count, Countrywide Financial Corporation, Countrywide Home Loans, Inc. and Countrywide Servicing are collectively referred to as the "Defendants."

9.    In Connecticut, for the period from July 1, 2006 to January 15, 2008, the Defendants referred 3,615 loans to foreclosure counsel. Of those loans, 2,516 consumers requested, and the Defendants provided, a reinstatement figure, which is the amount of principal, interest, legal and loan fees and costs which the consumers were required to pay in order to bring the loan current.

10.    The Defendants used the reinstatement figures as the basis for repayment plans by which consumers could cure defaults by making payments over time, and for modifications of the terms of loans.

9

11.    The Defendants typically would not provide an itemization of fees and costs with its reinstatement amounts and repayment plans unless the consumer requested it.

12.    Although the Defendants represented that the reinstatement figures were accurate calculations, or at least reasonable estimates, of the amounts due from consumers, the Defendants included excessive and inaccurate legal fees over and above those legitimately incurred by the Defendants.

13.    The Defendants provided consumers with inflated reinstatement figures due to their inclusion of excessive and inaccurate legal fees.

14.    On information and belief, the Defendants' practice of demanding payment of excessive and inaccurate fees and costs could discourage consumers from pursuing further efforts to negotiate a reinstatement, repayment plan or loan modification, and thereby could expose consumers to an increased likelihood of foreclosure.

15.    The Defendants routinely and systematically imposed these excessive fees and costs when it knew or reasonably should have known that consumers did not owe said fees and that the failure to pay them would result in an increased likelihood of foreclosure.

16.    Further, with respect to their foreclosure prevention programs, the Defendants publicly represented that their "No. 1 priority is to help borrowers stay in their homes," that the Defendants entered into loan modifications with consumers which "provide sustainable affordability," and that they had agreed to home retention standards to help consumers "in financial difficulty to establish suitable repayment plans or other solutions."

17.    On information and belief, contrary to such representations, the Defendants demanded that consumers enter into loan modifications and/or repayment plans which were not sustainable, affordable or suitable. By way of example, the Defendants required, on three hours' notice, that a consumer facing an imminent foreclosure sale agree to a repayment plan calling for a $5,000 up front payment toward the arrearage, eleven payments equal to approximately double his usual monthly payment, and a final balloon payment of over $10,000. In response to the consumer's questions about affordability, the Defendants' agent expressly assured the consumer that the $10,000 balloon payment would be taken care of by the end of the repayment plan. After the consumer had made about half of the monthly payments, the Defendants' agent told the consumer that he would still have to make the $10,000 balloon payment at the plan's end, the express prior representation notwithstanding.

## VIOLATIONS OF CUTPA

18.    By engaging in the aforementioned representations and omissions, the Defendants made untrue or misleading representations to consumers regarding the amount of the payments, fees and costs consumers had to pay in order to reinstate their loans and/or enter into and fulfill the terms of repayment plans and loan modifications.

19.    The Defendants' misrepresentations, as described herein, were likely to mislead consumers acting reasonably under the circumstances.

11

20.    The Defendants' acts or practices, as described herein, were material to consumers' decisions as to whether to reinstate their loans with and/or enter into repayment plans and loan modifications with Countrywide Servicing for mortgage loans.

21.    By engaging in the aforementioned acts and practices, the Defendants have violated the public policy of the State of Connecticut, including but not limited to the public policy against unconscionable lending practices and contracts, against making misrepresentations and nondisclosures, against violating the duties of good faith and fair dealing, and against high pressure credit practices, as embodied in the common law and in the banking laws of Connecticut, namely Conn. Gen. Stat. § 36a-494 and Conn. Gen. Stat. § 36a-517.

22.    The Defendants' acts and practices, as described herein, are oppressive, unethical, immoral and unscrupulous.

23.    The Defendants' acts or practices, as described herein, caused substantial injury to consumers, in that (i) consumers who paid to reinstate their loans and/or entered repayment plans and loan modifications paid Defendants excessive and inaccurate fees and costs, and/or (ii) the Defendants' required consumers to enter into unsustainable, unaffordable or unsuitable repayment plans or loan modifications.

24.    The Defendants' acts or practices, as described herein, therefore constitute unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b(a).

12

**COUNT FIVE** (Willfulness)

1-24.    Paragraphs 1 through 24 of Count Four are made paragraphs 1 through 24 of Count Five as if fully set forth herein.

25.    The Defendants have engaged in the acts or practices alleged herein when they knew, or should have known, that their conduct was unfair or deceptive in violation of Conn. Gen. Stat. § 42-110b(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court for the following relief:

1.      Enter judgment against the Defendants and in favor of the Plaintiff on each count of this Complaint;

2.      Permanently enjoin and restrain the Defendants, their principals, officers, directors, representatives, successors, assigns, agents, employees and all other persons acting in active concert with or on behalf of them, pursuant to General Statutes § 42-110m(a), from further violations of General Statutes § 42-110b(a);

3.      An order, pursuant to General Statutes § 42-110m(a), rescinding, reforming or modifying all mortgage loans between the Defendants and all Connecticut consumers who have been affected by the violations of General Statutes § 42-110b(a), at the sole discretion of each such consumer;

4.      An order, pursuant to General Statutes § 42-110m(a), directing the Defendants to pay restitution;

5.      An order pursuant to General Statutes § 42-110m(a), directing Defendants to notify every Connecticut consumer who may have been a victim of the acts and practices described herein, of the availability of restitution;

6.      An order, pursuant to General Statutes § 42-110m(a), directing Defendants to

14

disgorge all ill-gotten proceeds obtained through the acts and practices described herein;

7.    An order, pursuant to General Statutes § 42-110o(b), directing Defendants to pay civil penalties of not more than $5,000 for each willful violation of General Statutes § 42-110b(a);

8.    An award of reasonable attorneys fees, pursuant to General Statutes § 42-110m(a);

9.    An order pursuant to General Statutes § 36a-50(b), declaring that the Defendants' aforementioned business practices are in violation of General Statutes § 36a-494;

10.    An order pursuant to General Statutes § 36a-50(b) enjoining the Defendants from further violations of General Statutes § 36a-494;

11.    An order pursuant to General Statutes § 36a-50(b), declaring that the Defendants' aforementioned business practices are in violation of General Statutes § 36a-517;

12.    An order pursuant to General Statutes § 36a-50(b) enjoining the Defendants from further violations of General Statutes § 36a-517;

13.    An order pursuant to General Statutes 36a-50(b) for restitution;

14.    An order, pursuant to General Statutes § 36a-50(b), directing Defendants to pay civil penalties of not more than $100,000 for each violation of The Banking Law of Connecticut, Chapters 664a and 668 of the General Statutes;

15.    Costs of this suit; and

16.    Any such other relief in law or equity as the Court deems appropriate and just.

Dated at Hartford, Connecticut this 28th day of July, 2008.

HEREOF FAIL NOT, BUT OF THIS WRIT, MAKE DUE SERVICE AND RETURN
ACCORDING TO LAW.

Respectfully submitted,

PLAINTIFF
STATE OF CONNECTICUT,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

HOWARD F. PITKIN
COMMISSIONER OF BANKING

BY:

Phillip Rosario. Juris No. 85059
Mark Kohler, Juris No. 406666
Brendan T. Flynn, Juris No. 419935
Lorrie L. Adeyemi, Juris No. 85037
Dinah Bee, Juris No. 421664
Richard Porter, Juris No. 423015
*Assistant Attorneys General*
Office of the Connecticut Attorney General
110 Sherman Street
Hartford, Connecticut  06105
Tel.: (860) 808-5400
Fax: (860) 808-5593

ATTEST: A TRUE COPY

BRIAN FRANCIS ZITO
CONNECTICUT STATE MARSHAL
CONSTABLE-INDIFFERENT PERSON

16

RETURN DATE:  AUGUST 26, 2008

| | | |
|---|---|---|
| STATE OF CONNECTICUT and | : | SUPERIOR COURT |
| HOWARD F. PITKIN, COMMISSIONER | : | |
| OF BANKING OF THE STATE OF | : | |
| CONNECTICUT | : | |
|    *Plaintiff* | : | |
| | : | JUDICIAL DISTRICT OF |
|    v. | : | HARTFORD |
| | : | |
| COUNTRYWIDE FINANCIAL | : | |
| CORPORATION, COUNTRYWIDE | : | |
| HOME LOANS, INC., and | : | |
| COUNTRYWIDE HOME LOANS | : | |
| SERVICING, LP | : | |
|    *Defendants* | : | JULY 28, 2008 |

## STATEMENT OF AMOUNT IN DEMAND

The Plaintiff states that the amount in demand is greater than $15,000, exclusive of interest and costs.

PLAINTIFF
STATE OF CONNECTICUT,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

HOWARD F. PITKIN
COMMISSIONER OF BANKING

BY: _____

Phillip Rosario. Juris No. 85059
Mark Kohler, Juris No. 406666
Brendan T. Flynn, Juris No. 419935
Lorrie L. Adeyemi, Juris No. 85037
Dinah Bee, Juris No. 421664

ATTEST: A TRUE COPY

BRIAN FRANCIS ZITO
CONNECTICUT STATE MARSHAL
CONSTABLE-INDIFFERENT PERSON

1

Richard Porter, Juris No. 423015
*Assistant Attorneys General*
Office of the Connecticut Attorney General
110 Sherman Street
Hartford, Connecticut  06105
Tel.: (860) 808-5400
Fax: (860) 808-5593

# EXHIBIT B



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

SLM / ALL
Transmittal Number: 5937988
Date Processed: 07/29/2008

| | |
|---|---|
| Primary Contact: | Karina Buitrago<br>Countrywide Legal Department<br>5220 Las Virgenes Road, AC-11<br>Calabasas, CA 91302 |
| Copy of transmittal only provided to: | Andreia Hacimoto-May |

| | |
|---|---|
| Entity: | Countrywide Home Loans, Inc.<br>Entity ID Number 0213055 |
| Entity Served: | Countrywide Home Loans, Inc. |
| Title of Action: | State of Connecticut vs. Countrywide Financial Corporation |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Other |
| Court: | Superior Court Judicial District of Hartford, Connecticut |
| Case Number: | not given |
| Jurisdiction Served: | Connecticut |
| Date Served on CSC: | 07/29/2008 |
| Answer or Appearance Due: | 08/26/2008 |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Plaintiff's Attorney: | Phillip Rosario<br>860-808-5400 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882  |  sop@cscinfo.com

# EXHIBIT C

<u>OFFICER'S RETURN TO COURT</u>

STATE OF CONNECTICUT:
                                    : ss., Wethersfield                    JULY 28, 2008
COUNTY OF HARTFORD :

THEN AND BY VIRTUE HEREOF, AND BY DIRECTION OF THE PLAINTIFF'S
ATTORNEY, ON JULY 28, 2008 I MADE DUE AND LEGAL SERVICE UPON THE WITHIN
NAMED DEFENDANT, **COUNTRYWIDE FINANCIAL CORPORATION,** BY
DEPOSITING IN THE POST OFFICE, POSTAGE PAID, CERTIFIED MAIL, RETURN
RECEIPT REQUESTED, A VERIFIED TRUE AND ATTESTED COPY OF THE WITHIN
ORIGINAL WRIT SUMMONS AND COMPLAINT ADDRESSED TO THE WITHIN NAMED
DEFENDANT, **COUNTRYWIDE FINANCIAL CORPORATION,** SECRETARY OF THE
CORPORATION, BANK OF AMERICA CORPORATE CENTER, 100 N. TRYON STREET,
CHARLOTTE, NC 28255.

SUPPLEMENTAL RETURN TO FOLLOW

AND ALSO ON THE 28TH DAY OF JULY, 2008 I MADE DUE AND LEGAL SERVICE UPON
THE WITHIN NAMED DEFENDANT, **COUNTRYWIDE FINANCIAL CORPORATION,**
BY DEPOSITING IN THE POST OFFICE, POSTAGE PAID, CERTIFIED MAIL, RETURN
RECEIPT REQUESTED, A VERIFIED TRUE AND ATTESTED COPY OF THE WITHIN
ORIGINAL WRIT SUMMONS AND COMPLAINT ADDRESSED TO THE WITHIN NAMED
DEFENDANT, **COUNTRYWIDE FINANCIAL CORPORATION,** C/O THE
CORPORATION TRUST CORPORATION, AGENT FOR SERVICE, CORPORATION TRUST
CENTER, 1209 ORANGE STREET, WILMINGTON, DE 19801.

SUPPLEMENTAL RETURN TO FOLLOW

AND ALSO ON THE 28TH DAY OF JULY, 2008 I MADE DUE AND LEGAL SERVICE UPON
THE WITHIN NAMED DEFENDANT, **COUNTRYWIDE HOME LOANS, INC.,** BY
LEAVING A VERIFIED TRUE AND ATTESTED COPY OF THE WITHIN ORIGINAL WRIT
SUMMONS AND COMPLAINT WITH PROBAL BASU, MANAGER AT PRENTICE-HALL
CORPORATION SYSTEM, AGENT FOR SERVICE FOR THE WITHIN NAMED
DEFENDANT, **COUNTRYWIDE HOME LOANS, INC.,** AT 50 WESTON STREET,
HARTFORD, CT.

AND ALSO ON THE 28TH DAY OF JULY, 2008 I MADE DUE AND LEGAL SERVICE UPON
THE WITHIN NAMED DEFENDANT, **COUNTRYWIDE HOME LOANS SERVICING LP,**
BY DEPOSITING IN THE POST OFFICE, POSTAGE PAID, CERTIFIED MAIL, RETURN
RECEIPT REQUESTED, A VERIFIED TRUE AND ATTESTED COPY OF THE WITHIN
ORIGINAL WRIT SUMMONS AND COMPLAINT ADDRESSED TO THE WITHIN NAMED
DEFENDANT, **COUNTRYWIDE HOME LOANS SERVICING LP,** 4500 PARK
GRANADA, CH-11, CALABASAS, CA 91302.

SUPPLEMENTAL RETURN TO FOLLOW

AND ALSO ON THE 28TH DAY OF JULY, 2008 I MADE DUE AND LEGAL SERVICE UPON THE WITHIN NAMED DEFENDANT, **COUNTRYWIDE HOME LOANS SERVICING LP,** BY DEPOSITING IN THE POST OFFICE, POSTAGE PAID, CERTIFIED MAIL, RETURN RECEIPT REQUESTED, A VERIFIED TRUE AND ATTESTED COPY OF THE WITHIN ORIGINAL WRIT SUMMONS AND COMPLAINT ADDRESSED TO THE WITHIN NAMED DEFENDANT, **COUNTRYWIDE HOME LOANS SERVICING LP,** 5220 LAS VIRGENAS ROAD, CALABASAS, CA 91302.

SUPPLEMENTAL RETURN TO FOLLOW

AND ALSO ON THE 28TH DAY OF JULY, 2008 I MADE DUE AND LEGAL SERVICE UPON THE WITHIN NAMED DEFENDANT, **COUNTRYWIDE HOME LOANS SERVICING LP,** BY DEPOSITING IN THE POST OFFICE, POSTAGE PAID, CERTIFIED MAIL, RETURN RECEIPT REQUESTED, A VERIFIED TRUE AND ATTESTED COPY OF THE WITHIN ORIGINAL WRIT SUMMONS AND COMPLAINT ADDRESSED TO THE WITHIN NAMED DEFENDANT, **COUNTRYWIDE HOME LOANS SERVICING LP,** C/O CORPORATION SERVICE COMPANY, AGENT FOR SERVICE, 701 BRAZOS STREET, SUITE 1050, AUSTIN, TX 78701.

SUPPLEMENTAL RETURN TO FOLLOW

AND ALSO ON THE 28TH DAY OF JULY, 2008 I MADE DUE AND LEGAL SERVICE UPON THE WITHIN NAMED DEFENDANT, **COUNTRYWIDE HOME LOANS SERVICING, LP,** BY LEAVING A VERIFIED TRUE AND ATTESTED COPY OF THE WITHIN ORIGINAL WRIT SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE OF CONNECTICUT DULY AUTHORIZED TO ACCEPT SERVICE FOR THE WITHIN NAMED DEFENDANT, **COUNTRYWIDE HOME LOANS SERVICING, LP,** PURSUANT TO CONN. GEN. STAT. §34-38q, AT 30 TRINITY STREET, HARTFORD, CT.

THE WITHIN IS THE ORIGINAL WRIT SUMMONS AND COMPLAINT, WITH MY DOINGS HEREON ENDORSED

ATTEST:

BRIAN F. ZITO
STATE MARSHAL

FEES:

| | |
|---|---|
| SERVICE | $210.00 |
| ENDS. | 8.80 |
| PAGES | 126.00 |
| POSTAGE | 31.20 |
| 38 MILES | 19.00 |
| | |
| TOTAL | $395.00 |

Re: State of Connecticut, et al v. Countrywide Financial Corporation, et al
    Return Date: August 26, 2008

## OFFICER'S RETURN TO COURT

Re: <u>State of Connecticut, et al v. Countrywide Financial Corporation, et al</u>

### SUPPLEMENTAL RETURN

STATE OF CONNECTICUT:

            : ss., Wethersfield

COUNTY OF HARTFORD :                     AUGUST 7, 2008

ON THE 28th DAY OF JULY, 2008 I DEPOSITED IN THE POST OFFICE, POSTAGE PAID, CERTIFIED MAIL, RETURN RECEIPT REQUESTED, A VERIFIED TRUE AND ATTESTED COPY OF THE ORIGINAL WRIT SUMMONS AND COMPLAINT ADDRESSED TO THE WITHIN NAMED DEFENDANT, COUNTRYWIDE FINANCIAL CORPORATION, SECRETARY OF THE CORPORATION, BANK OF AMERICA CORPORATE CENTER, 100 N. TRYON STREET, CHARLOTTE, NC 28255. ON AUGUST 7, 2008 THE SIGNED RETURN RECEIPT NO. 7004 1160 0003 7698 5867 WAS RETURNED TO ME.

AND ALSO ON THE 28th DAY OF JULY, 2008 I DEPOSITED IN THE POST OFFICE, POSTAGE PAID, CERTIFIED MAIL, RETURN RECEIPT REQUESTED, A VERIFIED TRUE AND ATTESTED COPY OF THE ORIGINAL WRIT SUMMONS AND COMPLAINT ADDRESSED TO THE WITHIN NAMED DEFENDANT, COUNTRYWIDE FINANCIAL CORPORATION, C/O THE CORPORATION TRUST CORPORATION, AGENT FOR SERVICE, CORPORATION TRUST CENTER, 1209 ORANGE STREET, WILMINGTON, DE 19801. ON AUGUST 7, 2008 THE SIGNED RETURN RECEIPT NO. 7004 1160 0003 7698 5874 WAS RETURNED TO ME.

AND ALSO ON THE 28th DAY OF JULY, 2008 I DEPOSITED IN THE POST OFFICE, POSTAGE PAID, CERTIFIED MAIL, RETURN RECEIPT REQUESTED, A VERIFIED TRUE AND ATTESTED COPY OF THE ORIGINAL WRIT SUMMONS AND COMPLAINT ADDRESSED TO THE WITHIN NAMED DEFENDANT, COUNTRYWIDE HOME LOANS SERVICING LP, 4500 PARK GRANADA, CH-11, CALABASAS, CA 91302. ON AUGUST 7, 2008 THE SIGNED RETURN RECEIPT NO. 7004 1160 0003 7698 5881 WAS RETURNED TO ME.

AND ALSO ON THE 28th DAY OF JULY, 2008 I DEPOSITED IN THE POST OFFICE, POSTAGE PAID, CERTIFIED MAIL, RETURN RECEIPT REQUESTED, A VERIFIED TRUE AND ATTESTED COPY OF THE ORIGINAL WRIT SUMMONS AND COMPLAINT ADDRESSED TO THE WITHIN NAMED DEFENDANT, COUNTRYWIDE HOME LOANS SERVICING LP, 5220 LAS VIRGENAS ROAD, CALABASAS, CA 91302. ON AUGUST 7, 2008 THE SIGNED RETURN RECEIPT NO. 7004 1160 0003 7698 5898 WAS RETURNED TO ME.

OFFICE OF THE CLERK
SUPERIOR COURT
HARTFORD J.D.

2008 AUG 14 P 3: 37

RECD

AND ALSO ON THE 28ᵗʰ DAY OF JULY, 2008 I DEPOSITED IN THE POST OFFICE, POSTAGE PAID, CERTIFIED MAIL, RETURN RECEIPT REQUESTED, A VERIFIED TRUE AND ATTESTED COPY OF THE ORIGINAL WRIT SUMMONS AND COMPLAINT ADDRESSED TO THE WITHIN NAMED DEFENDANT, COUNTRYWIDE HOME LOANS SERVICING LP, C/O CORPORATION SERVICE COMPANY, AGENT FOR SERVICE, 701 BRAZOS STREET, SUITE 1050, AUSTIN, TX 78701. ON AUGUST 7, 2008 THE SIGNED RETURN RECEIPT NO. 7004 1160 0003 7698 5904 WAS RETURNED TO ME.

ATTEST:

BRIAN F. ZITO
STATE MARSHAL