**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| The PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 08 C 04210 |
| COUNTRYWIDE FINANCIAL CORPORATION, | ) | |
| COUNTRYWIDE HOME LOANS, INC., FULL | ) | Judge Elaine E. Bucklo |
| SPECTRUM LENDING, COUNTRYWIDE HOME | ) | |
| LOANS SERVICING, LP, and ANGELO MOZILO, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STAY PENDING
RESOLUTION OF MOTION BEFORE JUDICIAL PANEL ON MULTIDISTRICT
LITIGATION TO TRANSFER AND COORDINATE
OR CONSOLIDATE THIS AND RELATED CASES**

The Plaintiff, the PEOPLE OF THE STATE OF ILLINOIS, by LISA MADIGAN,

Attorney General of Illinois, respectfully requests that the Court deny Defendants' Motion to

Stay pending Defendant's motion to transfer and coordinate or consolidate this matter in a multi-

district litigation pursuant to 28 U.S.C. §1470.

Defendants maintain that it is common practice to issue stays when a MDL transfer

motion is pending. That argument carries much less weight, however, when an MDL has not

been yet been created and there is no guarantee that the MDL Panel will even consolidate these

cases. Although Defendants argue that a stay would conserve judicial resources, avoid prejudice

to the parties and prevent duplicative or inconsistent rulings, that argument is belied when they

have only filed motions to stay in half of the cases that are subject to the pending MDL transfer

and consolidation motion. Therefore, because both the balance of equities and the relevant

factors weigh against imposing a stay in this matter, Plaintiff requests that Defendants' motion be denied.

FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2008, the Illinois Attorney General filed its Complaint for injunctive and other relief against Countrywide Financial Corporation, Countrywide Home Loans, Inc., Full Spectrum Lending, Countrywide Home Loans Servicing, LP, and Angelo Mozilo (collectively "Countrywide" or the "Defendants") in the Circuit Court of Cook County, Illinois. The Illinois Attorney General's Complaint alleges violations by Countrywide of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 *et seq*., and the Illinois Fairness in Lending Act, 815 ILCS 120/4.

All of the alleged unlawful conduct that makes up the subject matter of this lawsuit involves real property situated in Illinois and consumers in this State. The alleged wrongful conduct includes: selling mortgage loans to Illinois borrowers who did not have the ability to repay them; engaging in loan origination practices that exposed Illinois borrowers to an unnecessarily high risk of loss of home equity and foreclosure; originating loans that were unnecessarily expensive to unknowing Illinois borrowers; engaging in deceptive marketing and advertising; incentivizing broker and employee misconduct yet failing to exercise sufficient oversight to ensure that such misconduct did not occur; unfairly and deceptively servicing loans to Illinois borrowers secured by Illinois real estate; refinancing Illinois consumers into loans that Countrywide knew or should have known were unaffordable; and decreasing Illinois borrowers' equity in their homes with the primary purpose of receiving fees from the refinancing.

On July 24, 2008, in an attempt to move and consolidate this case with five other state and federal cases – all filed in California and three of which were putative class actions,

Countrywide removed this case and filed a Section 1407 motion with the Judicial Panel on

MultiDistrict Litigation to transfer and consolidate or coordinate the cases in the Central District

of California.  On July 28, 2008, Countrywide added a sixth California case brought against it by

the City of San Diego to the list of cases it is attempting to have consolidated.

*Other Government Enforcement Actions against Countrywide*

To date, six other government enforcement actions have been initiated against

Countrywide since Illinois' filed its Complaint.  However, only three of these government

enforcement actions have also been removed to federal court and only two are subject to the

pending MDL motion for transfer and coordination and consolidation.  As the chart below

illustrates, not all of the enforcement actions have been removed or identified for potential MDL

transfer.

| Case Name and Number | State Court Filing Date | Removal | Statutory Violations Alleged | MDL Transfer Pending | Stay Filed |
|---|---|---|---|---|---|
| People of Illinois v. Countrywide Financial Corp, et al. 08 CH 22994 | June 25, 2008; | Removed July 22, 2008 (N.D. Ill.) | Illinois Consumer Fraud and Deceptive Business Practices Act; Illinois Fairness in Lending Act | Yes | August 14, 2008 |
| People of California v. Countrywide Financial Corp, et al. LC 81846 | June 25, 2008; | Removed July 24, 2008 (C.D. Cal) | California Business and Professions Code | Yes | None filed as of September 4, 2008 |
| Office of the Attorney General, Department of Legal Affairs, State of Florida v. Countrywide Financial Corp., et al. 08-030105 | June 30, 2008; | No | Florida Deceptive and Unfair Trade Practices Act | No | None filed as of September 4, 2008 |
| People of the State of California v. Countrywide Financial Corporation, et al. (City of San Diego action) | July 23, 2008; | Removed July 25, 2008 (S. D. Cal.) | California Business and Professions Code | Yes | August 14, 2008 |
| State of Connecticut | July 28, | Removed | Connecticut Unfair | No | None filed |

| Case Name and Number | State Court Filing Date | Removal | Statutory Violations Alleged | MDL Transfer Pending | Stay Filed |
|---|---|---|---|---|---|
| v. Countrywide Financial Corporation 08 CV08 4039094, | 2008; | August 27, 2008 to (D. Ct.) | Trade Practices Act, Banking Laws of Connecticut | | as of September 4, 2008 |
| State of West Virginia v. Countrywide Financial Corporation et al. 08 C 268 | August 12, 2008 | No | West Virginia Consumer Credit and Protection Act | No | None filed as of September 4, 2008 |
| State of Indiana v. Countrywide Financial Corp, et al. 76C01-0808-PL-0652 | August 25, 2008 | No | Indiana Home Loan Practices Act; Indiana Deceptive Consumer Sales Act | No | None filed as of September 4, 2008 |

*Private Class Actions against Countrywide*

In its MDL Petition to Transfer, Countrywide also seeks to consolidate the three private class actions with the actions filed by the Illinois Attorney General, the California Attorney General and the City of San Diego. As shown in the chart below, however, the allegations contained in the private class actions range from violations of the California Business and Professions Code to federal RICO violations – not violations of Illinois law as alleged in the Illinois Attorney General's complaint. Moreover, unlike Plaintiff, the class actions seek punitive damages.

| Case Name | Filing Date | Allegations | Stay Filed |
|---|---|---|---|
| Sizemore v. Countrywide Financial Corporation, et al. CV07-006094 (C.D. Cal.) | September 19, 2007 | RICO violations under 18 U.S.C. §1962(c) and (d); mail fraud under 18 U.S.C. §1341; wire fraud under 18 U.S.C. §1343; violations of the California False Advertising Laws; the California Business & Professions Code; the California Unfair Competition Law; the California False Advertising Law and unjust enrichment | None filed as of August XX, 2008 |
| Hursh v. Countrywide Financial Corporation, et al. | Filed in state court | Violations of the California Business and Professions Code | None filed as of |

| 08-CV-1313 (S.D. Cal.) | on July 2, 2008 and removed on July 22, 2008 | | August XX, 2008 |
|---|---|---|---|
| Leyvas v. Bank of America Corp, et al. CV08-787 (C.D. Cal.) | July 17, 2008 | Violations of the California Business and Professions Code; Unfair or Deceptive Acts or Practices; and Unjust Enrichment/ Disgorgement of Profits. | None filed as of August XX, 2008 |

Plaintiff strongly contests the existence of federal jurisdiction in this matter and, on August 20, 2008, filed a motion to remand this matter back to state court. Unlike Illinois' case, all five of the California-filed cases involve alleged violations of California law. The two causes of action the Illinois Attorney General pursues here, authorized by the Illinois Consumer Fraud Act and the Illinois Fairness in Lending Act, constitute a law enforcement action completely dissimilar, procedurally and substantively, to those private putative class actions to which Countrywide would have our action joined. This law enforcement action is police and regulatory by nature, neither a creature of common law nor a case for damages tried before a jury.

Further, the Illinois Attorney General proceeds here only on behalf of the People of the State of Illinois, not on behalf of any private individuals, and in a procedurally distinct manner. Unlike the putative private class actions, Illinois' enforcement action is grounded on facts acquired pursuant to the Attorney General's unique administrative subpoena power in which the Attorney General obtained Countrywide's business records and the statements of its former employees, *prior* to filing her lawsuit.

Finally, while based on Illinois' statutes, this is fundamentally an equitable action. This action seeks the protection of the health, safety and welfare of the populous and lands within this State. The Attorney General brought this lawsuit to, among other things, restrain Countrywide from foreclosing on Illinois homeowners in Illinois courts. At bottom, this is an enforcement

action that seeks injunctive relief in Illinois to curtail unlawful, unfair, immoral and unethical conduct in the marketplace where, here in Illinois, the integrity of trade and commerce – indeed homeownership – has been implicated and further damage to Illinois communities and property is immediately threatened.

On August 21, 2008, this Court held a hearing during which Countrywide's Motion to Stay and Plaintiff's Motion to Remand were discussed.  The Court set a simultaneous briefing schedule for the motions and scheduled a tentative ruling date prior to the hearing on Countrywide's MDL petition on September 25, 2008.  As discussed below, Countrywide's motion to stay would severely delay and prejudice the Attorney General's ability to obtain critical equitable relief for Illinois homeowners when our State is facing an unprecedented economic crisis and should therefore be denied.[1]

<u>LEGAL STANDARD</u>

The power to stay proceedings is incidental "to the power inherent  in every court to control the disposition of the causes on its docket."  *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).  In determining whether to grant motions to stay pending an MDL request, courts consider the (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are consolidated.  *See Terkel v. AT&T Inc.*, 2006 WL 1663456, at *1 (N.D. Ill. June 9, 2006)

<u>ARGUMENT</u>

Although Countrywide has moved for a stay, it is well within this Court's discretion and authority to deny the motion.  Countrywide argues that because it has requested MDL transfer

---

[1] By the end of the first quarter of 2008, for example, 35.88% of the subprime loans serviced by Countrywide nationwide were delinquent.

and coordination or consolidation pursuant to Section 1407, a stay is appropriate in this case. While a district court has the power to grant a stay pending the resolution of a matter's transfer to the MDL, the mere pendency of a Section 1407 transfer motion before the MDL Panel does not entitle a party to a stay. *See Smith v. Merck*, 2006 WL 3842190, at *1 (S.D. Ill. Dec 26, 2006) (considering factors and determining that pendency of 2700 related cases warranted stay) and *Terkel*, 2006 WL 1663456, at *1 (stay denied due to potential prejudice to plaintiffs). Furthermore, the MDL Rules expressly state that the motion to transfer limits neither the presiding district court's jurisdiction nor its ability to act on the matters properly before it. *See* MDL Rule 1.5[2]; *Alegre v. Aguayo*, 2007 WL 141891, at *2-3 (N.D. Ill. Jan. 17, 2007) and *Gen. Electric Co. v Byrne*, 611 F.2d 670, 673 (7th Cir. 1979). And, the transferee court retains full jurisdiction over the action until a final transfer order by the MDL Panel is filed with the clerk of the district court of the transferee district. *See Gen. Electric Co.*, 611 F.2d at 673 (district court had authority to order remand prior to effective date of transfer order); *Illinois Municipal Retirement Fund v. Citigroup*, 391 F.3d 844, 852 (7th Cir. 2004) (same); *Bavone v. Eli Lilly*, 2006 WL 1096280, at *1 (S.D. Ill. Apr. 25, 2006); *Rutherford v. Merck*, 428 F.Supp.2d 842, 845 (S.D. Ill. 2006). Consequently, this Court is well within its authority to deny Countrywide's request for a stay as it has failed to meet the required factors.

I.     PLAINTIFF WOULD BE PREJUDICED SHOULD THIS COURT GRANT COUNTRYWIDE'S MOTION TO STAY

Due to the fact there is no currently formed MDL and the time sensitive nature of Plaintiff's claims, granting Countrywide's motion to stay would greatly prejudice Plaintiffs'

---

[2] Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation states: "The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. §1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court."

case. The MDL Panel is not even set to hear oral argument on the creation of an MDL in this matter until September 25, 2008. Moreover, the MDL Rules do not limit the timeframe within which the Panel must render its decision whether it will create an MDL. Thus, there is no way to know how long it will take the Panel to issue a ruling. Moreover, assuming *arguendo* that the Panel does consolidate the six cases, there is also no guarantee that the Panel will assign the cases to a judge already conversant with one of the cases in the Central District of California, as requested by Countrywide. This is particular uncertain when, over Countrywide's vigorous opposition, the MDL Panel recently transferred and consolidated three fair lending class actions against Countrywide in the Western District of Kentucky; notwithstanding the fact that none of the cases where filed in that district court. Therefore, there could be a good deal of delay before Plaintiff is able to prosecute its case, should a stay be granted. As discussed in Plaintiff's Complaint, Illinois is seeking relief for consumers who are at this moment in danger of losing their homes. Therefore, an indefinite timeframe would unduly impede the Plaintiff's ability to proceed with its action and Plaintiff would thereby be prejudiced. *See Terkel*, 2006 WL 1663456, at *3 (stay not appropriate when plaintiff sought injunctive relief to restrain ongoing harmful conduct, MDL motion to transfer was still pending, and no guarantee that the MDL Panel would rule expeditiously on consolidation). Here, granting the stay would prejudice and harm Plaintiff's law enforcement action and its ability to seek critical relief for Illinois consumers facing foreclosures.[3]

II.    COUNTRYWIDE WOULD NOT SUFFER ANY HARDSHIP OR INEQUITY IF THE CASE IS NOT STAYED

---

[3] From 2006 to 2007, Countrywide's foreclosure complaint filings increased by 117% in Cook County (this only includes loans originated and/or serviced by Countrywide Home Loans, Inc. and not foreclosures filed by Full Spectrum Lending or any other Countrywide entity).

Countrywide conjectures that it would be prejudiced with duplicative discovery and motion practice if a stay is not granted. On this point, Countrywide cites to cases where an MDL proceeding had already been established, a fact that presents a significant and fundamental distinction from the current case. In Countrywide's cited cases, the fact that an MDL already existed allowed for a genuine showing that there was a tangible concern involving duplicative litigation and discovery. This is not the situation here. For example, in *Azar v. Merck & Co.,* the court entered a stay when there was an existing order transferring all actions alleging injury from ingestion of VIOXX to one forum. 2006 WL 3086943, at *1 (N.D. Ind. Oct 27, 2006). The court granted the stay on the grounds that allowing pretrial proceedings to continue would unduly prejudice and unnecessarily expose defendants to duplicative litigation. *Id.* Likewise, in *Benge v. Eli Lilly and Company*, an MDL had already been created for claims related to the drug Zyprexa. 553 F.Supp.2d 1049, 1050 (N.D. Ind. Apr 16, 2008). The court granted a stay because plaintiffs would inevitably seek discovery and to depose Eli Lilly's current employees and former employees who had already been deposed in the MDL proceeding, defendant would be prejudiced by duplicative discovery. *Id.* The specter of duplication here is speculative at best. It is, in fact, non-existent until an MDL is firmly in place. Because an MDL has not yet been created, Countrywide is simply not subject to any prejudicially burdensome duplication of discovery or motion practice.

III.     JUDICIAL ECONOMY DOES NOT FAVOR A STAY OF PLAINTIFF'S CASE

Judicial economy does not favor a stay in Plaintiff's case when Countrywide's motion to transfer and consolidate may well be denied and this matter may proceed in front of this Court. It is true that judicial economy may to some extent favor a stay where an MDL has been created and the case at hand is pending transfer to the already existing MDL. An MDL has not been

9

created here – in fact the MDL Panel has not even heard oral argument on the creation of an

MDL.  None of the cases against Countrywide have been transferred and consolidated that it now

seeks to have stayed.[4]  Moreover, there is a good chance that transfer and consolidation will not

even be granted in Plaintiff's case.  Countrywide string cites cases where attorney general

actions were consolidated with private civil actions in federal court, but in those cases all

claimants brought federal claims and, importantly, there is no indication the attorneys general

opposed MDL consolidation.  Indeed, they appeared to either request MDL consolidation or had

voluntarily joined an already created MDL proceeding.[5]  *See In re Mid-Atlantic Toyota Antitrust

Litig.*, 605 F.Supp. 440 (D. Md. 1984) (defendants, not attorneys general, opposed consolidation)

and *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355 (6th Cir. 2007) (attorneys general joined

already existing MDL).

       Countrywide's argument that a temporary stay would help achieve an orderly transfer of

this action to a single federal judge is further belied by the fact it is not treating all of the cases

filed against it in a similar fashion.  A party's failure to move to stay all pending actions

indicates it is "willing to have more than one judge decide the allegedly common or overlapping

issues."  *See Terkel,* 2006 WL 1663456, at *2 (stay denied; judicial economy not served when

similar case was not stayed).  In *Terkel*, plaintiffs sought to enjoin AT&T's release of records

and information about its subscribers' domestic telephone conversations to the National Security

Agency.  2006 WL 1663456, at *1.  The court noted, among other things, that defendants had not

---

[4] An MDL transfer Order was filed on August 8, 2008 for the following fair lending class action suits:  Gabriel Garcia v. Countrywide Financial Corp, et al (C.D. CA); Sonia Jenkins, et al. v. Countrywide Home Loans, Inc. (N.D. Ill.) and Gillian Miller, et al. v. Countrywide Bank, N.A., et al (MA. D.).   These cases were transferred and consolidated under Judge John Heyburn II in the Western District of Kentucky.
[5] *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2001 WL 64775 (D. Me. Jan. 26, 2001) is simply silent on this issue.

moved to stay a similar case.  2006 WL 1663456, at *2.  Therefore, the goal of judicial economy would not be served.  *Id.*

A similar result is appropriate here.  Countrywide has not filed a stay in all of the actions pending against it or even removed all of the pending actions to federal court.  Of the six cases pending potential MDL consolidation, Countrywide has only moved to stay two.[6]  In fact, in one of the cases, the *Sizemore* class action, Countrywide has started dispositive motion practice by filing a motion to dismiss on July 18, 2008.[7]  The hearing on this motion is scheduled for October 6, 2008.  In sum, as Countrywide is apparently willing to allow some of the cases to continue on divergent tracks with potentially differing rulings from different judges, judicial economy will not be promoted by issuing a stay.

Finally, Countrywide argue that a stay is proper because the jurisdictional issues raised in its removal petition, which are purportedly based on the same federal question and bankruptcy grounds as the other cases now pending MDL consolidation, be heard by the MDL.  As an initial matter, one of the jurisdictional issues raised by Countrywide relied on a safe harbor provision in Plaintiff's Illinois Consumer Fraud Act claim – obviously an issue not involving federal law like the other cases.  Judicial economy is not served when one case, apart from any other, requires consideration and application of a different state statute.

Even more significant, however, is the fact that an MDL is not well established in this matter and has not even been created.  Judicial economy may be served by a stay pending transfer to an MDL when a judge is already conversant with the jurisdictional issues raised by the party seeking remand.  That is not the case here.  Countrywide's reliance on two cases

---

[6] *People of California v Countrywide Financial Corp, et al.* City of San Diego suit, 08-CV-1348-JLS-BLM, Motion to Stay filed August 14, 2008. *Hursh v. Countrywide Financial Corp, et al.* Class action, 08-CV-01313-L-NLS, Joint Motion to Stay filed August 22, 2008 and granted August 25, 2008.
[7] *Sizemore v. Countrywide Financial Corp. et al*. 07-CV-06094-SVW-AJW

involving Vioxx litigation is unavailing. *See Hardin v. Merck & Co.*, 2007 WL 1056790 at *1 (N.D. Cal. Apr 5, 2007) (stay granted despite existence of jurisdiction issue when MDL had been in existence for a year and a half and approximately 50 other cases raised motions to remand based on a similar fraudulent joinder argument) and *Devers v. Merck & Co.,* 2006 WL 1377086, at *1 (E.D. Cal. May 18, 2006) (stay granted when MDL had been in existence for a year). Therefore, because there is no MDL judge familiar with and ready to hear Plaintiff's motion to remand expeditiously, judicial economy is not served.

Therefore, this Court should not stay proceedings in this case because the necessary factors are simply not met. A delay would be prejudicial to Plaintiff's time sensitive claims. Furthermore, a stay would not prejudice Defendant or promote judicial economy since an MDL has not even been established.

<u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests this Court deny Defendants' motion to stay.

Dated: September 4, 2008                    Respectfully submitted,

                                            LISA MADIGAN, IN HER OFFICIAL
                                            CAPACITY AS ATTORNEY GENERAL OF
                                            ILLINOIS,


                                            ___/s/ Veronica L. Spicer_____
                                            VERONICA L. SPICER
                                            Assistant Attorney General


LISA MADIGAN

Attorney General of Illinois

DEBORAH HAGAN, Chief
Consumer Protection Division

JAMES D. KOLE, Chief
Consumer Fraud Bureau

CECILIA ABUNDIS
SUSAN N. ELLIS
THOMAS P. JAMES
VERONICA L. SPICER
Assistant Attorneys General
Telephone: 312-814-3000
100 W. Randolph St., 12th Floor
Chicago, IL 60601